THE STATE OF OHIO, APPELLANT, *v*. ROBINSON, APPELLEE.

[Cite as *State v. Robinson,* 124 Ohio St.3d 76, 2009-Ohio-5937.]

*Criminal law — R.C 2909.04(A)(3) — The damaging of a single private telephone or cellular telephone disrupts public services in violation of R.C. 2909.04(A)(3) if the conduct substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-services personnel, or emergency-facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.*

(Nos. 2008-1942 and 2008-2170 — Submitted September 29, 2009 — Decided November 18, 2009.)

APPEAL from and CERTIFIED by the Court of Appeals for Union County, No. 14-07-20, 177 Ohio App.3d 560, 2008-Ohio-4160.

_____

SYLLABUS OF THE COURT

The damaging of a single private telephone or cellular telephone disrupts public services in violation of R.C. 2909.04(A)(3) if the conduct substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-services personnel, or emergency-facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

_____

O'CONNOR, J.

{¶ 1} In this appeal, we must determine whether the damaging of a single private telephone or cellular telephone disrupts public services sufficiently to constitute a violation of R.C. 2909.04(A)(3).

**{¶ 2}** The state asserts that the statutory language of R.C. 2909.04(A)(3) is unambiguous and plainly contemplates a violation of Ohio law when a person has damaged a single private telephone or cellular telephone. The state further contends that there was sufficient evidence that destruction of a phone by appellee, Raynell Robinson, substantially impaired the ability of law-enforcement and emergency medical personnel to respond to an emergent situation.

**{¶ 3}** Conversely, Robinson contends that R.C. 2909.04(A)(3) does not apply to the damaging of a single private telephone and applies only to utility services provided to a sizeable segment of the public. In the alternative, Robinson maintains that his destruction of the phone did not substantially impair the ability of law-enforcement and emergency medical personnel to respond.

**{¶ 4}** We hold that the damaging of a single private telephone or cellular telephone disrupts public services in violation of R.C. 2909.04(A)(3) if the conduct substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-services personnel, or emergency-facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm. We further hold that Robinson's conduct substantially impaired the ability of law-enforcement officers and emergency-medical-services personnel to respond. We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court convicting Robinson for disrupting public services in violation of R.C. 2909.04(A)(3).

### Relevant Background

**{¶ 5}** Anthony Robinson ("Anthony"), Antonio Robinson ("Antonio"), and Heather Hoge attended a party at the apartment of Raynell Robinson ("Robinson") and his girlfriend, Judy Newhard, in the early morning hours of September 2, 2006. Anthony is Robinson's brother, Antonio is Robinson's nephew, and Hoge is Antonio's friend. Robinson and Newhard reside at the Meadows apartment complex in Marysville, Ohio. The Meadows has two

entrances and includes several apartment buildings with addresses that are numbered from the 400s to the 700s.

{¶ 6} Robinson was not home when Anthony, Antonio, and Hoge arrived. Robinson arrived home a couple of hours later; shortly thereafter, he became upset and told everyone to leave. Hoge proceeded to leave, and Antonio went with her.

{¶ 7} As they were getting into Hoge's truck to leave, Robinson appeared and asked Antonio what Newhard had been doing in the apartment. Antonio responded to Robinson's question, and then Robinson hit Antonio in the back of the head. Robinson continued to attack Antonio; eventually, Antonio was able to call 9-1-1 on his cell phone.

{¶ 8} Antonio told the 9-1-1 dispatcher that he was at the Meadows and his face was split open. While Antonio was talking to the 9-1-1 dispatcher, Robinson grabbed the phone and smashed it. The dispatcher asked Antonio for his specific location at the Meadows, but the call was disconnected before Antonio could answer the dispatcher's inquiry. The 9-1-1 operator dispatched the fire department, an ambulance, and police to the Meadows and told them that she did not know the address.

{¶ 9} Soon thereafter, Hoge called 9-1-1, and Robinson told her to show him her hands and that she had better not be calling the police. Robinson then began attacking Antonio again, and Antonio ended up on the ground. The dispatcher repeatedly asked Hoge for a specific address and stressed the importance of emergency personnel having a specific location, but Hoge was unable to give the dispatcher the information because Robinson told her to get off the phone and threatened to shoot anyone who called the police. Hoge later called 9-1-1 a third time and set her cell phone on the seat of her truck so Robinson would not see her using it.

{¶ 10} Officers Bartholomew and Collier were dispatched to the Meadows for a suspected assault. Officers are required to make sure the scene is safe before medics can come in and assist the injured parties. Officer Bartholomew went to the main entrance of the Meadows and made a quick circle looking for anyone trying to get his attention. Officer Collier headed toward the other end of the apartments but stopped to talk to Newhard, who was walking on the main road. Officer Bartholomew proceeded into the area around the higher-numbered apartments. A man standing outside of his apartment directed the officer to the area where the assault had occurred.

{¶ 11} As Officer Bartholomew approached a group of males, Robinson came toward him and told him he needed to leave. Officer Bartholomew radioed Officer Collier for assistance. A few minutes after Officer Collier arrived, the officers were able to ask for an ambulance. After speaking with the people involved, the police cited Robinson for disorderly conduct, and Antonio was taken to the hospital.

{¶ 12} The Union County Grand Jury indicted Robinson for the felonious assault of Antonio, disrupting public services in violation of R.C. 2909.04(A)(3), and intimidation of a victim of a crime. The felonious-assault charge was dismissed upon the state's motion after Antonio moved to Arizona and refused to voluntarily return to Ohio to testify. That charge is not at issue in this appeal.

{¶ 13} The case proceeded to trial on the remaining charges, and the jury returned a verdict finding Robinson guilty of disrupting public services in violation of R.C. 2909.04(A)(3) and guilty of intimidation of a victim in a criminal case in violation of R.C. 2921.04(B). Robinson was sentenced to 15 months' imprisonment for disrupting public services and two years for intimidation of a victim, with the sentences to run concurrently.

{¶ 14} Robinson appealed to the Third District Court of Appeals, arguing that the verdicts were against the manifest weight of the evidence and not

4

supported by sufficient evidence. The Third District affirmed the conviction for intimidation of a victim but reversed Robinson's conviction for disruption of public services. *State v. Robinson*, 177 Ohio App.3d 560, 2008-Ohio-4160, 895 N.E.2d 262. The court of appeals held that R.C. 2909.04(A) clearly and unambiguously prohibits substantial interference with public emergency systems and utilities, not the destruction of a single private telephone or cell phone. Id. at ¶ 25.

{¶ 15} The Third District Court of Appeals recognized that its decision is in conflict with decisions of the courts of appeals for the Second, Fifth, and Eighth districts that hold that destruction of a private telephone constitutes disruption of public services.[1] Id. at ¶ 30. The Third District further held that even if destruction of a cell phone constituted disruption of public services, the state failed to prove the element of substantial impairment because the officers arrived at the scene of the assault within a few minutes of being dispatched. Id. at ¶ 31, 33.

{¶ 16} We recognized the conflict between the courts of appeals and asserted jurisdiction over the state's discretionary appeal, and we consolidated the appeals. *State v. Robinson*, 120 Ohio St.3d 1452, 2008-Ohio-6813, 898 N.E.2d 967. In the certified conflict, we are asked to determine whether the damaging of a single private telephone or cellular telephone disrupts public services sufficiently to constitute a violation of R.C. 2909.04(A)(3). 120 Ohio St.3d 1451, 2008-Ohio-6813, 898 N.E.2d 966. The state's discretionary appeal requires us to determine whether the destruction of a single private telephone or cellular phone substantially impairs the ability of law-enforcement officers, firefighters, rescue

---

1. The court of appeals certified that its decision was in conflict with the judgments rendered in *State v. Yoakum* (Jan. 17, 2002), 5th Dist. No. 01CA005, 2002 WL 63696; *State v. Thomas*, 2nd Dist. No. 19435, 2003-Ohio-5746; *State v. Johnson*, 8th Dist. Nos. 81692 and 81693, 2003-Ohio-3241; and *State v. Brown* (1994), 97 Ohio App.3d 293, 646 N.E.2d 838.

personnel, emergency-medical-services personnel, or emergency-facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm. *Robinson*, 120 Ohio St.3d 1452, 2008-Ohio-6813, 898 N.E.2d 967.

{¶ 17} We answer the certified question in the affirmative and further hold that Robinson substantially impaired the ability of law-enforcement officers and emergency-medical-services personnel to respond to the 9-1-1 call.

## Analysis

### *Disruption of Public Services*

{¶ 18} Initially, we must decide whether the damaging of a single private telephone or cellular telephone constitutes a violation of R.C. 2909.04(A)(3). The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11. In interpreting a statute, this court has held that "the intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation." *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus.

{¶ 19} We find that the language of R.C. 2909.04(A)(3) is plain and unambiguous. Robinson was convicted of disrupting public services under R.C. 2909.04, which provides as follows:

{¶ 20} "(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

{¶ 21} " * * *

{¶ 22} "(3) Substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or

emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm."

{¶ 23} The language in R.C. 2909.04(A)(3) is clear in that it prohibits (1) conduct that substantially impairs the ability of emergency-services personnel (2) to either respond to an emergency or protect and preserve any person or property from serious physical harm. The statute unambiguously specifies that in order for one to disrupt public services under R.C. 2909.04(A)(3), the conduct involved must be the knowing damaging of or tampering with any property.

{¶ 24} The word "property" is defined in R.C. 2901.01(A)(10)(a) as follows:

{¶ 25} " 'Property' means any property, real or personal, tangible or intangible, and any interest or license in that property. 'Property' includes, but is not limited to * * * telecommunications devices * * *."

{¶ 26} R.C. 2901.01(A)(10)(c) provides that the term "telecommunications device," as it is used in division (A)(10), has the same meaning as in R.C. 2913.01.

{¶ 27} "Telecommunications device" is defined in R.C. 2913.01(Y) as:

{¶ 28} "[A]ny instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, *telephone, cellular telephone*, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem." (Emphasis added.)

{¶ 29} In accordance with the foregoing statutory provisions, a private telephone or cellular telephone constitutes property as the word is used in R.C. 2909.04(A). Therefore, the destruction of a private telephone or cellular telephone constitutes damaging or tampering with property under R.C. 2909.04(A).

{¶ 30} The plain language of R.C. 2909.04(A)(3) does not limit its application to the interference with public emergency systems and utilities on a large scale, as the Third District found. Division (A)(3) of R.C. 2909.04 does not contain any reference to the words "public emergency systems" or "utilities." Thus, the Third District's interpretation that the statute does not apply to the destruction of a single private telephone or cellular telephone is not a sound reading of the plain language.

{¶ 31} Despite finding that the statutory language is unambiguous, the court of appeals reviewed the legislative history of R.C. 2909.04(A)(3) and examined the statute in pari materia with subsections (A)(1) and (A)(2). 177 Ohio App.3d 560, 2008-Ohio-4160, 895 N.E.2d 262, ¶ 25-26. Because the language of R.C. 2909.04(A)(3) is clear, it is not necessary to resort to other means of interpretation as the court of appeals did. *Slingluff*, 66 Ohio St. 621, 64 N.E. 574, at paragraph two of the syllabus. We therefore decline to resort to other means of interpreting the statute.

{¶ 32} For the reasons stated above, we hold that the damaging of a single private telephone or cellular telephone constitutes a violation of R.C. 2909.04(A)(3) if the conduct substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-services personnel, or emergency-facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

*Substantial Impairment*

{¶ 33} The remaining issue for our consideration is whether the destruction of Antonio Robinson's cellular phone substantially impaired the ability of law-enforcement officers and emergency personnel to respond to Antonio's 9-1-1 call or to protect and preserve any person or property from serious physical harm. The court of appeals held that Robinson's conviction for disrupting public services was not supported by sufficient evidence, because the

officers arrived on the scene of the assault within minutes of being dispatched. 177 Ohio App.3d 560, 2008-Ohio-4160, 895 N.E.2d 262, ¶ 33-34.  The appellate court therefore found that the destruction of the cell phone did not substantially impair the ability of emergency service providers to respond to the incident.  Id. We disagree.

{¶ 34} In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  In *Jenks,* we emphasized that "[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact.  It is not the function of an appellate court to substitute its judgment for that of the factfinder. Rather, upon appellate review, the evidence must be viewed in the light most favorable to the prosecution." Id. at 279.

{¶ 35} The determination as to whether there was sufficient evidence to support Robinson's conviction for disruption of public services in violation of R.C. 2909.04(A)(3) turns solely on whether the destruction of Antonio's cell phone *substantially impaired* the ability of the law-enforcement officers and emergency medical personnel to respond to Antonio's 9-1-1 call.[2]  The phrase "substantially impaired" is not defined in the Revised Code, and thus it must be given the meaning generally understood in common usage.  *State v. Zeh* (1987), 31 Ohio St.3d 99, 103, 31 OBR 263, 509 N.E.2d 414.

---

2. For purposes of this appeal, Robinson does not dispute that sufficient evidence existed to prove the other elements of his disruption-of-public-services conviction.

**{¶ 36}** Applying this principle, the term "substantial" is commonly understood to mean "not seeming or imaginary," "not illusive," "considerable in amount," and "being that specified to a large degree or in the main." Webster's Third New International Dictionary (1986) 2280. "Impair" means "to make worse" or "diminish in quantity, value, excellence, or strength." Id. at 1131. A rational trier of fact could find beyond a reasonable doubt that the destruction of Antonio's phone considerably diminished the ability of the police and emergency medical personnel to respond to the 9-1-1 call.

**{¶ 37}** Both the appellate court and Robinson focused on the fact that the officers arrived on the scene within minutes of being dispatched as being dispositive of whether the officers' ability to respond was substantially impaired. R.C. 2909.04(A)(3), however, does not require proof of a substantial impairment of the officers' *response time*. The pertinent inquiry is directed toward their *ability to respond*.

**{¶ 38}** Antonio was able to tell the 9-1-1 dispatcher only that he was at the Meadows and that his face had been injured. When Robinson smashed the phone and disconnected the call, the dispatcher was attempting to elicit a more specific location from Antonio. The importance of emergency-services personnel knowing a caller's exact location is critical so that police and medical responders can reach the location as quickly as possible. This is especially true in the case of a suspected assault, when the officers must reach the scene of the incident and make sure it is safe before they can allow emergency medical personnel to attend to the victim's injuries. It is additionally important for emergency personnel to reach the victim immediately to prevent further harm to the victim.

**{¶ 39}** The significance of the 9-1-1 dispatcher obtaining a caller's precise location is further exhibited by comments made by the dispatcher when Hoge made the second call to 9-1-1. The dispatcher repeatedly asked Hoge for her

exact location and emphasized that emergency personnel could not help her unless they had a more specific location.

{¶ 40} As a result of the negligible information that Antonio was able to provide to the 9-1-1 dispatcher before Robinson destroyed the cell phone, the police could not go directly to the scene of the incident. Rather, the police had to search a large apartment complex and question bystanders before locating Antonio. While the police were attempting to respond to Antonio's request for help, Robinson continued to strike Antonio. Also during this time frame, Robinson threatened physical harm if anyone called police, which the jury found sufficient to sustain an additional conviction for intimidation of a victim. Once Officer Bartholomew eventually found Antonio, it took an additional few moments for him to call for backup and assess the situation before he was able to call for an ambulance. Under the totality of the circumstances, it was reasonable for the jury to determine that the delay in locating Antonio substantially impaired the officers' ability to respond to Antonio's call.

{¶ 41} Additional factors support a finding that Robinson's destruction of the cell phone substantially impaired the ability of emergency personnel to respond to Antonio's 9-1-1 call. The officers had to presume that Antonio had been the victim of an assault based upon the content of the calls to 9-1-1. However, the officers did not know whether an assault had actually occurred, how the assault occurred, the extent of Antonio's injuries, how many people were involved in the incident, or whether the perpetrator or perpetrators had weapons. As a result, they did not know how many officers were needed on the scene or what type of medical assistance was necessary. The inability to get the required information created a safety issue not only for the 9-1-1- caller but also for the police officers, the emergency responders, and the public. The information was significant to the officers' ability to respond to Antonio's 9-1-1 call, and the lack of information substantially impaired the officers' ability to respond to the call.

{¶ 42} The jury was appropriately instructed that in order to find Robinson guilty of disrupting public services, it had to find that he "did knowingly by damaging or tampering with any property substantially impair the ability of law enforcement officers, fire fighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm." The trial court reemphasized that there must have been a substantial impairment when it defined the term "knowingly."

{¶ 43} Applying the jury instructions to the evidence, the jury could have rationally found beyond a reasonable doubt that Robinson's destruction of Antonio's phone substantially impaired the ability of emergency personnel to respond to the 9-1-1 call. By focusing solely on the length of the delay in reaching Antonio, the Third District erroneously substituted its judgment for that of the jury and failed to view the evidence in the light most favorable to the prosecution.

{¶ 44} For the reasons stated above, we hold that Robinson's conduct substantially impaired the ability of law-enforcement officers and emergency-medical-services personnel to respond to Antonio's 9-1-1 call.

**Conclusion**

{¶ 45} For the foregoing reasons, we hold that the damaging of a single private telephone or cellular telephone disrupts public services in violation of R.C. 2909.04(A)(3) if that conduct substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-services personnel, or emergency-facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm. We further hold that Robinson's conduct substantially impaired the ability of law-enforcement officers and emergency-medical-services personnel to respond.

{¶ 46} We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court convicting Robinson of disrupting public services in violation of R.C. 2909.04(A)(3).

Judgment reversed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

David W. Phillips III, Union County Prosecuting Attorney, and Melissa A. Chase, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Elisabeth A. Long, Deputy Solicitor, and Lori J. Weisman, Assistant Solicitor, urging reversal for amicus curiae, Attorney General of Ohio.

_____