[Cite as *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2012-Ohio-1183.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| ESBER BEVERAGE COMPANY | : | William B. Hoffman, P.J. |
| | : | Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case Nos. 2011CA00113 and |
| | : | 2011CA00116 |
| | : | |
| LABATT USA OPERATING | : | |
| COMPANY, LLC, et al. | : | O P I N I O N |
| | | |
| Defendants-Appellants | | |

CHARACTER OF PROCEEDING:          Civil Appeal from Stark County
Court of Common Pleas Case No.
2009CV03142

JUDGMENT:                                         Reversed and Remanded

DATE OF JUDGMENT ENTRY:           March 12, 2012

APPEARANCES:

For Plaintiff-Appellee                           For Defendant-Appellant

LEE E. PLAKAS                                    JAMES B. NIEHAUS
GARY A CORROTO                               JENNIFER L. WHITNEY
Tzangas, Plakas, Mannos & Raies, Ltd.    Frantz Ward LLP
220 Market Avenue South                      2500 Key Tower, 127 Public Square
Eighth Floor                                        Cleveland, Ohio  44114-1304
Canton, Ohio  44702

STANLEY R. RUBIN                              PAUL J. PUSATERI
437 Market Avenue, North                     Milligan Pusateri Co., LPA
Canton, Ohio  44702                            4684 Douglas Circle
                                                       Canton, Ohio  44718

[Cite as *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2012-Ohio-1183.]

For Defendant-Appellant Superior Beverage Group, LTD

JAMES L. MESSENGER
RICHARD J. THOMAS
JERRY R. KRZYS
6 Federal Plaza Central, Suite 1300
Youngstown, Ohio  44503

*Edwards, J.*

**{¶1}**   Appellants, Labatt USA Operating Co.; KPS Capital Partners, L.P.; North American Breweries, Inc.; Douglas Tomlin; and Superior Beverage Group, Ltd., appeal a judgment of the Stark County Common Pleas Court in favor of appellee Esber Beverage Company.

<u>STATEMENT OF FACTS AND CASE</u>

**{¶2}**   Appellant KPS Capital Partners, L.P. (KPS) is a Delaware limited partnership in the business of providing management and investment services to private equity funds.   Investment funds managed by KPS own North American Breweries Holdings, LLC, which in turn owns 100% of North American Breweries, Inc.  (NAB). Labatt USA Operating Co. is an indirect, wholly owned subsidiary of NAB.  Appellant Doug Tomlin is regional sales director of appellant Labatt USA Operating Co.  Superior Beverage Group (Superior) is a family-owned distributor of alcoholic beverages located in Youngstown, Ohio, which distributed the Genesee brands of beer for NAB.  Appellee

Esber Beverage Company (Esber) is a family-owned beer and wine distribution business located in Canton, Ohio, which distributed Labatt products in certain counties in Ohio.

{¶3} Esber has distributed the Labatt brands since the 1950's. Prior to 1995, Esber acquired the Labatt products from the Labatt Brewing Company Ltd. (LBCL), a Canadian company. In 1995, Interbrew, a Belgian brewer, purchased LBCL and acquired control of the Labatt brands. Interbrew merged with AmBev in 2004 to form InBev N.V./S.A. At the time of the 2004 merger, Labatt products were imported to the United States by an entity called Labatt USA LLC, which is not the same company as appellant Labatt USA Operating Co.

{¶4} Following the Interbrew/AmBev merger, InBev N.V./S.A. merged Labatt USA LLC with Beck's North America into a third subsidiary, Latrobe Brewing Company, and renamed the merged company InBev USA L.L.C. As of January 1, 2005, Esber acquired the Labatt brands from InBev USA (hereinafter, InBev) for distribution in Stark and surrounding counties. InBev notified Esber that it was terminating Esber's franchise pursuant to R.C. 1333.85(D) because InBev was a "successor manufacturer" within the meaning of the statute and therefore had ninety days to terminate the franchise. Esber challenged the termination and this Court ultimately concluded that InBev was not a successor manufacturer, but rather the merger that took place was "more accurately defined as a restructuring and renaming of its U.S. business operations, with no products changing ownership control." *Esber Beverage Co. v. InBev USA* LLC, Stark App. No. 2006CA00113, 2007-Ohio-927, ¶66.

{¶5} On November 30, 2007, InBev and Esber negotiated a new distribution agreement. This agreement appointed Esber as the exclusive distributor of Labatt products in ten Ohio counties for an indefinite term. Esber had the right of first refusal "to be appointed to carry any new brands or extensions of existing Brands that are produced in Canada or are imported into the United States by Supplier [InBev] or any successor in interest . . ." Distribution Agreement, §8(a)(i-x).

{¶6} In July of 2008, InBev agreed to acquire Anheuser-Busch Companies, Inc. The United States Justice Department filed an anti-trust suit against InBev in November, 2008. To resolve the lawsuit, InBev agreed to transfer the Labatt brands to another entity with the ability to compete in the relevant markets. InBev agreed to sell the Labatt brands and related assets to a KPS affiliate. The Labatt brands were transferred to Labatt USA Operating, a KPS affiliate formed to acquire InBev's assets related to the Labatt brands. Labatt USA Operating became a subsidiary of NAB, which also owned High Falls Operating Co., LLC, which distributed Genesee brands. Superior was the distributor of Genessee brands in the same general market where Esber distributed Labatt brands.

{¶7} Shortly after acquiring the Labatt brands, NAB invited both Esber and Superior to make a presentation regarding each distributor's ability to distribute both the Labatt and Genesee brands in the relevant market. NAB decided to use Superior to distribute both Labatt and Genesee and notified Esber of its decision to terminate Esber's distribution agreement on May 15, 2009.

{¶8} Esber filed the instant action on August 14, 2009, for declaratory judgment, injunctive relief and compensatory damages, alleging breach of contract,

promissory estoppel, tortious interference with business relations, conspiracy and antitrust violations.

{¶9} On December 1, 2009, the trial court granted Esber's motion for a preliminary injunction, which allowed Esber to continue to distribute Labatt products during the pendency of the lawsuit.  On cross-motions of the parties for summary judgment, the trial court granted partial summary judgment to Esber, finding that appellants were bound by the terms of the distribution agreement and that appellants did not have the right to terminate the agreement pursuant to R.C. 1333.85(D).  The court found that R.C. 1333.85(D) did not apply because Labatt USA Operating had assumed the distribution agreement entered into between InBev and Esber and had no superseding statutory right to terminate the agreement.  The court further found that even if R.C. 1333.85(D) did apply, Labatt USA Operating was not a successor manufacturer within the meaning of the statute.  Judgment Entry, November 29, 2010.

{¶10} In May of 2011, Esber voluntarily dismissed its remaining claims.  The trial court issued a final appealable order on May 12, 2011, which incorporated the November 29, 2010 judgment.

{¶11} Appellants Labatt USA Operating Co. ; KPS Capital Partners, L.P.; North American Breweries, Inc.;   Douglas Tomlin filed a notice of appeal in case number 2011CA00113, assigning the following errors:

{¶12} "I. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT NONE OF THE APPELLANTS 'CAN PROVE THAT THEY WERE MANUFACTURERS AT THE TIME OF THE PURCHASE OF THE ASSETS.'

**{¶13}** "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THAT THE APPELLANTS WERE REQUIRED TO BE MANUFACTURERS AT THE TIME OF THE PURCHASE OF ASSETS TO QUALIFY AS A 'SUCCESSOR MANUFACTURER' UNDER R.C. SECTION 1333.85(D).

**{¶14}** "III. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE SALE OF ASSETS FROM INBEV USA, L.L.C. TO APPELLANT LABATT USA OPERATING CO, LLC WAS NOT A 'CHANGE IN CORPORATE STRUCTURE, BUT SIMPLY THE SAME TYPE OF RESTRUCTURING OR TRANSFER DISAPPROVED OF BY THE FIFTH DISTRICT IN *ESBER V. INBEV'* AND, THEREFORE, APPELLANT LABATT USA OPERATING CO, LLC IS NOT A SUCCESSOR MANUFACTURER UNDER R.C. SECTION 1333.85(D).

**{¶15}** "IV. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT R.C. SECTION 1333.85(D) DOES NOT APPLY WHEN A PREDECESSOR'S WRITTEN DISTRIBUTION AGREEMENT IS TRANSFERRED TO A SUCCESSOR MANUFACTURER.

**{¶16}** "V. THE TRIAL COURT ERRED BY NOT GRANTING SUMMARY JUDGMENT TO APPELLANTS."

**{¶17}** Appellant Superior filed a notice of appeal in Case Number 2011CA00116, assigning the following errors:

**{¶18}** "I. THE TRIAL COURT ERRED AS A MATER OF LAW IN ITS NOVEMBER 29, 2010, JUDGMENT ENTRY, BECAUSE LABATT USA OPERATING COMPANY, LLC IS A 'SUCCESSOR MANUFACTURER' AND IT PROVIDED TIMELY NOTICE OF TERMINATION TO ESBER UNDER R.C. 1333.85(D).

**{¶19}** "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS NOVEMBER 29, 2010 JUDGMENT ENTRY, BECAUSE A SUCCESSOR MANUFACTURER MAY TERMINATE A DISTRIBUTOR UNDER R.C. 1333.85(D) IF A DISTRIBUTOR HAS A WRITTEN FRANCHISE AGREEMENT WITH THE PRIOR MANUFACTURER, AND A WRITTEN FRANCHISE AGREEMENT MAY NOT LIMIT THE SUCCESSOR MANUFACTURER'S RIGHT TO TERMINATE DISTRIBUTORS UNDER R.C. 1333.85(D).

**{¶20}** "III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING INJUNCTIVE RELIEF IN ITS NOVEMBER 29, 2010 JUDGMENT ENTRY AND ITS DECEMBER 1, 2009 JUDGMENT ENTRY, AS CORRECTED ON DECEMBER 10, 2009, BECAUSE, IN THE EVENT OF A WRONGFUL TERMINATION, OHIO'S ALCOHOLIC BEVERAGE FRANCHISE ACT PROVIDES FOR MONETARY DAMAGES, NOT INJUNCTIVE RELIEF."

**{¶21}** This Court consolidated the appeals for purposes of the trial court record and oral argument only on July 1, 2011. However, because the parties raise the same issues and both appeals originate from the same trial court case, we hereby consolidate the cases for purposes of opinion and judgment entry as well.

**{¶22}** This case concerns the propriety of a summary judgment entered by the trial court. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ. R. 56(C) which provides in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions,

affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

**{¶23}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed.  The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case.  The moving party must specifically point to some evidence which demonstrates that the moving party cannot support its claim.  If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial.  *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

**{¶24}** It is upon this standard that we review the appellants' assignments of error.

Case No. 113 – IV; Case No. 116- II

**{¶25}** We address these assignments of error first because both raise error as a matter of law in the trial court's conclusion that R.C. 1335.85(D) does not apply in the instant case because appellants assumed InBev's written distribution agreement with Esber, an agreement which was for an indefinite term and purported to bind a successor in interest to InBev. If the trial court correctly determined that the statute did not apply, we need not reach the issue of whether Labatt USA Operating is a successor manufacturer within the meaning of the statute.

**{¶26}** The Ohio Alcoholic Beverage Franchise Act, R.C. 1333.83 et seq., governs the franchise relationships between manufacturers and distributors of alcoholic beverages, including beer, within the State of Ohio. Under R.C. 1333.85, a franchise cannot be terminated absent prior consent unless just cause exists and notice is provided. R.C. 1333.85(A) lists three situations which always constitute just cause: (1) voluntary bankruptcy; (2) involuntary bankruptcy; or (3) loss of liquor permits. R.C. 1333.85(B) lists four situations which never constitute just cause: (1) failure of a party to take action that would result in a violation of federal or state law; (2) restructuring, other than in bankruptcy, of a manufacturer's business; (3) unilateral alteration of the franchise by a manufacturer for a reason unrelated to any breach of the franchise or violation of R.C. 1333.82 and 1333.86; and (4) "a manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control." R.C. 1333.85(C) governs how a manufacturer and distributor should deal with excess inventory in case of termination.

**{¶27}** R.C. 1333.85(D) is an exception to the general rule requiring just cause. Under the terms of subsection (D), if a successor manufacturer "acquires all or

substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer," then it may terminate, via written notice, a previous manufacturer's franchise agreements within 90 days of the date of the acquisition. R.C. 1333.85(D). Upon termination, the "distributor shall sell and the successor manufacturer shall repurchase the distributor's inventory of the terminated or nonrenewed product or brand" at the "laid-out cost to the distributor including freight and cartage." R.C. 1333.85(C) and (D). The successor manufacturer must also compensate the distributor "for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated." R.C. 1333.85(D). The value of directly related business includes, but is not limited to, "the appraised market value of those assets of the distributor principally devoted to the sale of the terminated ... product or brand and the goodwill associated with that product or brand." R.C. 1333.85(D).

{¶28} Appellee argues that R.C. 1333.85(D), when read in pari materia with R.C. 1333.83, is only intended to address the situation where there is an absence of a written agreement between the parties. Because in the instant case appellants assumed the written distribution agreement InBev entered into with appellee, appellee argues that appellants did not have a right to terminate such agreement under R.C. 1333.85(D).

{¶29} R.C. 1333.85(D) states in pertinent part:

{¶30} "If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another

manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. Any notice of termination or nonrenewal of the franchise to a distributor of the acquired product or brand shall be received at the distributor's principal place of business within the ninety-day period. If notice is not received within this ninety-day period, a franchise relationship is established between the parties."

**{¶31}** R.C. 1333.83 states in pertinent part:

**{¶32}** "When a distributor of beer or wine for a manufacturer, or the successors or assigns of the manufacturer, distributes the beer or wine for ninety days or more without a written contract, a franchise relationship is established between the parties, and sections 1333.82 to 1333.87 of the Revised Code apply to the manufacturer, its successor or assigns, and the distributor."

**{¶33}** However, there is no need to resort to other methods of statutory interpretation such as legislative history or reading the statute in pari materia when the language of the statute is unambiguous. *State v. Robinson*, 124 Ohio St.3d 76, 919 N.E.2d 190, 2009-Ohio-5937, ¶31. In the instant case, R.C. 1333.83 specifically refers to the situation when there is not a written contract between the parties. On the other hand, R.C. 1333.85(D) does not include the language used in R.C. 1333.83 concerning the lack of a written contract. Rather, R.C. 1333.85(D) gives the successor manufacture a right of termination of a "franchise." Franchise is defined by R.C. 1333.82(D) to include a contractual relationship:

{¶34} "'Franchise' means a contract or any other legal device used to establish a contractual relationship between a manufacturer and a distributor."

{¶35} In the instant case, the contractual relationship between the manufacturer and Esber was established by a contract and thus falls within the definition of "franchise" as used in R.C. 1333.85(D). By the plain language of the statute, a successor manufacturer had ninety days within which to provide Esber with notice of termination of the franchise. By the plain language of the statute, such right of termination does not apply solely to arrangements when there is no written agreement between the parties. The statute clearly gives a successor manufacturer a narrow window of time in which to determine whether it wants to keep the franchise agreements with distributors it assumed from its predecessor, or whether it wants to terminate such agreements with distributors. Failure of the manufacturer to terminate an agreement within ninety days establishes a franchise agreement between these two parties that can only be altered by compliance with the just cause provisions found earlier in the Act.

{¶36} The fourth assignment of error in Case No. 11-113 and the second assignment of error in Case No. 11-116 are sustained.

Case No. 113 - I, II, III; Case No. 116 - I

{¶37} In these assignments of error, appellants argue that the court erred in finding Labatt USA Operating Co. was not a successor manufacturer under R.C. 1333.85(D).

{¶38} Appellants first argue that the court erred in finding that Labatt USA Operating Co. was not a "manufacturer" prior to its purchase of Labatt brands from InBev, and therefore did not qualify as a successor manufacturer under the statute.

**{¶39}** The trial court held:

**{¶40}** "Simply stated, since at this point none of the Defendants can prove that they were manufacturers at the time of the purchase of the assets, they do not qualify as successor manufacturers."

**{¶41}** R.C. 1333.82(B) defines manufacturer:

**{¶42}** "(B) 'Manufacturer' means a person, whether located in this state or elsewhere, that manufactures or supplies alcoholic beverages to distributors in this state."

**{¶43}** R.C. 1333.85(D) provides in pertinent part:

**{¶44}** "If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand."

**{¶45}** Appellee's argument is that only a "successor manufacturer" can take advantage of the right to terminate a franchise agreement for no reason, and, pursuant to R.C. 1333.85(D) an entity must be a "successor manufacturer" at the time it acquires the brand of alcoholic beverage from another manufacturer. Appellee argues that Labatt USA Operating Co. was not a "manufacturer" at the time it acquired the Labatt brand, and therefore, could not be a "successor manufacturer." A "manufacturer" under R.C. 1333.82(B) is an entity that supplies alcoholic beverages to distributors in this

state.  Therefore, appellee argues that, because Labatt USA Operating Co. was created for the purpose of supplying the Labatt brands and it was not supplying anything to anyone until it acquired the Labatt brands (and the franchise agreement), Labatt USA Operating Co. was not a "successor manufacturer" at the time it acquired the Labatt brands.  While we acknowledge that a strict reading of the statutory language leads to the position argued by appellee, we find such a strict reading of the definition of "manufacturer" also leads to a conclusion that is illogical and could not have been the intent of the drafters.  We do not find that the statutes intended to treat a business's right to terminate a franchise differently based on whether the business was created for the purpose of supplying a brand of alcohol to distributors or whether the business which acquired the brand was an existing supplier.  In either situation, the entity would be faced with making business decisions on how to operate most efficiently.  We, therefore, interpret R.C. 1333.82(B) to include as a "manufacturer" one who manufactures or supplies alcoholic beverages to distributors in this state or is in the business of manufacturing or supplying alcoholic beverages to distributors in this state.

**{¶46}** The trial court further found that appellants did not meet the definition of "successor" provided by R.C. 1333.85(D):

**{¶47}** "From the evidence submitted thus far, this Court finds it disturbing to discover the 'ring around the rosy' actions of KPS, NAB and Labatt USA operating which demonstrate a series of contradictory positions and raises the issue as to whether these purchases and sales were a 'shell game' and thus a sham.  In fact, these acts resemble the '*restructuring'* actions that concerned the Fifth District in *Esber v. InBev*.  It

is paralyzing that in a blink of an eye, Labatt USA Operating now owns or controls Labatt USA.

**{¶48}** "More importantly, in reviewing the exhibits provided by Esber, both Labatt USA Operating and Labatt USA appear to be the same entities. A close examination of the two invoices provided to the Court notes that on the billing invoices for both Labatt corporate offices on December 8, 2008 (before sale) and September 9, 2009 (after sale), it reflects the identical address, telephone number, corporate office and language in the warranty. As a result, it doesn't appear that there is any change in the corporate structure, but simply the same type of *restructuring* or transfer disapproved of by the Fifth District in *Esber v. InBev*." Judgment Entry, November 29, 2010.

**{¶49}** In *Esber v. InBev*, supra, this Court found that a merger was more accurately defined as a restructuring and renaming of InBev N.V./S.A.'s U.S. business operations, with no products changing ownership control. 2007-Ohio-927 at ¶66. Similarly, in *Esber Beverage Co. v. Heineken USA, Inc.*, Stark App. No. 2011CA00033, 2011-Ohio-5939, we found that the assignment or transfer of a manufacturer's product or brand to another manufacturer over which it exercises control, in order to manipulate the date of a transaction to circumvent the 90 day notice provision in R.C. 1333.85(D) did not meet the requirements of the statute. Id. at ¶25.

**{¶50}** However, in the instant case, it is clear that there was a transfer of ownership and control of the Labatt brands from InBev to Labatt USA Operating Co., effective March 13, 2009. There is no evidence that InBev and Labatt USA Operating Co. are under common control. While InBev used "Labatt USA" as a trade name prior to the sale of the Labatt brands, InBev sold its assets related to the Labatt products to

Labatt USA Operating. The common use of the trade name "Labatt USA" does not make InBev and Labatt USA Operating the same entity any more than two people sharing the same name are the same person. InBev was required to divest itself of the Labatt brands to settle the federal antitrust suit, and the federal court specifically found that there was no evidence of any secret agreement or that the sale is in any way a sham. Unlike *Esber v. Inbev,* supra, and *Esber v. Heinenken*, supra, the evidence is undisputed that there was in fact a complete sale of all assets related to the Labatt brands. The trial court erred in finding that Labatt USA Operating was not a successor manufacturer within the meaning of R.C. 1333.85(D).

{¶51} Assignments of error I, II, and III in Case No. 11-113 and assignment of error I in Case No. 11-116 are sustained.

Case No. 113 - V

{¶52} Appellants argue that the court erred in failing to grant summary judgment in their favor. Because we have found as a matter of law that R.C. 1333.85(D) gave appellants the right to terminate the distribution agreement with Esber, the trial court should have granted summary judgment to appellants on the issue of their right to terminate the contract pursuant to statute. The fifth assignment of error in Case No. 113 is sustained.

Case No. 116 - III

{¶53} Appellant Superior argues that the trial court erred in granting injunctive relief to Esber because only money damages are available pursuant to the statute.

{¶54} This Court has recently rejected this argument:

**{¶55}** "In *Tri–County Wholesale Dist. v. The Wine Group,* No. 2:10–cv–693 (S.D.Ohio Sept. 2, 2010), the United States District Court for the Southern District of Ohio, addressed the same argument as HUSA asserts herein. The Court found:

**{¶56}** "'The Franchise Act contemplates suits for 'damages *or other relief.*' Ohio Rev. Code § 1333.87 (emphasis added). Moreover, numerous courts have issued injunctions preserving the rights of distributors under the Franchise Act until the merits could be fully litigated, a fact that presumably has not escaped the Ohio General Assembly's notice. *See, e.g., InBev USA LLC v. Hill Distrib. Co.,* No. 2:05–cv–298 (S.D.Ohio Mar. 31, 2005) (granting temporary restraining order); *Esber Beverage Co. v. Labatt USA Operating Co.,* No.2009CV03142 (Stark Cty. Ohio Com. Pl. Dec. 1, 2009) (granting preliminary injunction).' *Id.* at *2. We agree.

**{¶57}** "Based upon the language of R.C. 1333.87, we find the trial court did not err in granting injunctive relief to Esber." *Esber Beverage Co. v. Heineken USA, Inc.*, Stark App. No. 2011CA00033, 2011-Ohio-5939, ¶29-31.

**{¶58}** The third assignment of error in Case No. 116 is overruled.

**{¶59}** The summary judgment of the Stark County Common Pleas Court is reversed.  This case is remanded to that court for further proceedings according to law.


By: Edwards, J.

Hoffman, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/r1220

[Cite as *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2012-Ohio-1183.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ESBER BEVERAGE COMPANY | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LABATT USA OPERATING | | |
| COMPANY, LLC, et al., | : | |
| | : | |
| Defendants-Appellants | : | CASE NOS. 2011CA00113 and |
| | | 2011CA00116 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is reversed and remanded to the trial court for further proceedings. Costs assessed to appellee.

_____

_____

_____

JUDGES