[Cite as *State v. Hall*, 2012-Ohio-1051.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97035**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ADAM D. HALL

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541951

**BEFORE:** Rocco, J., Blackmon, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

-i-

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Brian M. McDonough
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Adam Hall appeals from his conviction after a jury found him guilty of gross sexual imposition.

{¶2} Hall presents two assignments of error. He claims his conviction is not supported by either sufficient evidence or the manifest weight of the evidence. Upon a review of the record, this court cannot agree with Hall's claims. Consequently, his conviction is affirmed.

{¶3} The victim, L.A., provided the following description of the events leading to Hall's conviction.

{¶4} L.A., a young, single mother, first met Hall in 2008 and the two of them had a sexual relationship for a time until Hall left the area. A few months later, L.A. became involved with a new man; she moved in with him and bore this man's child, L.A.'s second, in early 2010.

{¶5} Hall returned to the Cleveland area in June 2010. At that time, L.A.'s new relationship was under strain, and she was living with relatives. She began to see Hall again "[a]lmost daily." L.A. described her relationship with Hall as "sex friends."

{¶6} At the end of the summer, her infant's father persuaded L.A. to return to his home. L.A. told Hall that she no longer wanted to see him.

However, L.A. nevertheless permitted Hall to visit her on at least two occasions when the father of her infant was not at home. On August 19, 2010, L.A. also met Hall at "his sister's" residence for a sexual encounter with him.

{¶7} On the afternoon of August 31, 2010, L.A. awoke from sleep to see Hall standing in her bedroom doorway. L.A. "lit a cigarette" and asked him how he had gotten inside. Although she had not heard him, because the air conditioning unit had been removed from the bedroom window, L.A. surmised Hall made his entry there.

{¶8} After L.A. put on the television for her older child and gave a bottle to the infant, Hall drew her into the living room. The two of them sat next to each other on the couch, and Hall "pleaded for [her] to get back with him." Although they spoke for nearly "an hour," L.A. "told him no," and "told him he had to leave." Hall asked her if she would "at least sleep with him" one last time. L.A. refused.

{¶9} At that point, Hall became "pushy and started grabbing, like touching" L.A. "[b]etween [her] legs" and on her "inner thigh and [her] vaginal area" as he asked her to "give him some." He became "[s]lowly angrier," causing L.A. to become "fearful of him." L.A. resisted, but Hall

"kept persisting." L.A. eventually arose, telling Hall she wanted to go to the bathroom.

{¶10} Hall followed her, propelled her from behind, and once they both were inside the bathroom, shoved her down onto the toilet seat. While asking L.A. to "just give him five minutes," Hall tried to take her pants and panties off. She struggled, but Hall was successful in exposing her; he "performed oral sex on" L.A.

{¶11} Thereafter, by thrusting her hands into Hall's face, L.A. managed to rise, but Hall "tried to like wrestle [her] to the floor." Once L.A. was face down on the bathroom floor with her "knees bent," Hall "had intercourse" with her. L.A. felt "disgusted." Hall exited the house shortly afterward, but helped L.A. to pull the air conditioning unit into the bedroom before he left her.

{¶12} L.A. reported the incident to the police and proceeded to the hospital for treatment. As a result, Hall was indicted in this case on four counts, charged with aggravated burglary, kidnapping, rape, and gross sexual imposition.

{¶13} Hall's case proceeded to a jury trial. After considering the evidence, the jury acquitted Hall of the first three counts, but found him guilty of gross sexual imposition.

{¶14} Hall appeals from his conviction with two assignments of error as follows:

"I.  The trial court erred in denying Appellant's motion for acquittal as to the charge when the state failed to present sufficient evidence to sustain a conviction.

"II.  Appellant's conviction is against the manifest weight of the evidence."

{¶15} Hall asserts in his first assignment of error that L.A.'s testimony was "an outright, unbelievable lie" that was unsupported because she displayed no physical injuries.  This argument, however, relates to credibility and weight, which are not appropriate subjects for a sufficiency analysis.

{¶16} In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, 919 N.E.2d 190, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} Hall was charged with gross sexual imposition in violation of R.C. 2907.05(A)(1), which prohibits a person from having sexual contact with

another, "not his spouse, by purposely compelling such person to submit by force or threat of force."

{¶18}  Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶19} According to L.A., as they sat next to each other on the couch, Hall began to touch her thighs and vaginal area.  L.A. indicated Hall did so despite her resistance, and while telling her he wanted her to sleep with him one last time.  Viewing L.A.'s testimony in a light most favorable to the prosecution, the jury could have found the state established the elements of gross sexual imposition.  *State v. Alsip*, 8th Dist. No. 93105, 2010-Ohio-1757, ¶ 14.

{¶20}  Hall argues in his second assignment of error that the manifest weight of the evidence does not support his conviction.

{¶21} The test to be applied when reviewing a claim that a conviction is against the manifest weight of the evidence was set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The test is "much broader" than the test for sufficiency; i.e., this court reviews the entire record to determine whether in resolving any conflicts in the evidence, the

trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 21 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶22} Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶23} Although Hall argues L.A.'s testimony was simply not worthy of belief, the jury clearly considered her credibility carefully. The jury obviously determined that, at least initially, Hall forced himself on L.A. when he began touching her erogenous areas. Because the jury was in the position to evaluate L.A.'s demeanor as she recounted the incident, this court cannot substitute its judgment for that of the jury. *State v. Wilson*, 8th Dist. No. 96627, 2011-Ohio-6886, ¶ 35.

{¶24} Accordingly, Hall's assignments of error are overruled.

{¶25} His conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

PATRICIA ANN BLACKMON, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR