[Cite as *Heineken U.S.A., Inc. v. Esber Beverage Co.*, 2014-Ohio-291.]

<span style="color:red">**[Vacated opinion. Please see 2014-Ohio-946.]**</span>

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| HEINEKEN USA, INCORPORATED | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013 CA 00158 |
| ESBER BEVERAGE COMPANY | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of
Common Pleas, Case No.2013CV00891

JUDGMENT:    Reversed and Remanded

DATE OF JUDGMENT ENTRY:    January 27, 2014

APPEARANCES:

For Plaintiff-Appellant

JAMES L. MESSENGER
RICHARD J. THOMAS
JERRY KRZYS
6 Federal Plaza Central, Ste. 1300
Youngstown, OH 44503

For Defendant-Appellee

GARY CORROTO
MARIA KLUTINOTY EDWARDS
Tzangas, Plakas, Mannos, Ltd
220 Market Avenue South, 8th Floor
Canton, OH  44702

STANLEY R. RUBIN
437 Market Avenue North
Canton, OH   44702

*Gwin, J.,*

**Overview**

**{¶1}** This case deals with the rights of manufacturers[1] and distributors of alcoholic beverages under the Ohio Alcoholic Beverages Franchise Act, ["OABFA"] R.C. 1333.82 et seq., when the entity that supplies a particular brand of alcoholic beverage to distributors in this state sells all of its right to supply that particular brand to a wholly-owned subsidiary of the entity that owns that particular brand of alcoholic beverage. Under R.C. 1333.85(D), when there is a transfer of ownership, the successor manufacturer may terminate any distributor's franchise without just cause by giving the distributor notice of termination within 90 days of the acquisition of the particular product or brand. Such notice of termination triggers an evaluation of the franchise value, for which the successor manufacturer must compensate the terminated franchisee. Id. *See, Esber Beverage Co. v. LaBatt USA Operating Co.* Ohio Sup. Court, Case No. 2012-0941, 2013-Ohio-4544 (Oct. 17, 2013) ["*LaBatt*"]. In *LaBatt*, the Ohio Supreme Court recently held "that R.C. 1333.85(D) is clear and unambiguous and permits successor manufacturers to assemble their own team of distributors so long as the successor manufacturers provide timely notice and compensate those distributors who are not being retained." 2013-Ohio-4544, ¶1.

**Facts and Procedural History**

**{¶2}** Appellee, Esber Beverage Company ("Esber") is one of the oldest, family-owned, continuously operated beverage wholesalers in Ohio and the United States. It was founded in 1937 by Dave and Helen Esber and is currently operated by second and

---

[1] R.C. 1333.82(B) defines "manufacturer" as "a person, whether located in this state or elsewhere, that manufactures or supplies alcoholic beverages to distributors in this state."

third generation Esber family members. Esber is an Ohio distributor of alcoholic beverages to retail permit holders in the state.

**{¶3}** Heineken N.V. is a beverage manufacturer based in the Netherlands. Heineken USA, Inc. ["HUSA"] is a wholly owned subsidiary of Heineken Brouwerijen B.V. ["Heineken B.V."], which, in turn, is a wholly owned subsidiary of Heineken N.V.

**{¶4}** Pursuant to a multi-billion dollar acquisition, in April 2008, Heineken N.V. acquired certain Scottish & Newcastle UK Ltd. ["S&N UK"] businesses in Belgium, Finland, Ireland, Portugal, the United Kingdom, and the United States ("the S&N Acquisition"). See, *Esber Beverage Co. v. Heineken USA, Inc.,* 5th Dist. Stark No. 2011 CA00033, 2011–Ohio–5939. [*"Esber I"]*. As a result of the S&N Acquisition, Heineken N.V. assumed exclusive control over and liability for S&N UK, its subsidiaries and its assets, including a brand of hard cider named Strongbow Hard Cider ["Strongbow"], effective April 28, 2008. Since that time, Heineken N.V. has, through its subsidiaries, manufactured, marketed and sold Strongbow in international markets.

**{¶5}** Prior to January 1, 2013, Heineken N.V. supplied Strongbow into the United States through its import agent Vermont Hard Cider Company, LLC ("VHCC").

**{¶6}** Heineken B.V. entered into an agreement with VHCC effective December 31, 2012, pursuant to which Heineken B.V. compensated VHCC in exchange for the early termination of VHCC's right to supply Strongbow in the United States. *Affidavit of Hemmo Parson, Senior Legal Counsel for Heineken B.V.,* ¶19 ["Parson"]. Thereafter, Heineken B.V. entered into an agreement with HUSA, "nam[ing]" the latter as the exclusive US import agent for the Brand effective January 1, 2013. *Affidavit of Hemmo*

*Parson,* ¶20. "Heineken USA's importation of the Strongbow Brand into the United States is now governed by said agreement" with Heineken B.V. *See Parson*, ¶20.

**{¶7}** By letter dated October 30, 2012, Heineken B.V. and HUSA informed Esber it was terminating Esber's "franchise and the associated distribution rights" with respect to Strongbow pursuant to R.C. 1333.85(D). On March 29, 2013, HUSA filed a Complaint in the Stark County Court of Common Pleas pursuant to R.C. 1333.851(B). The Complaint sought a determination within 90 days by the Court of the diminished value to Esber's business due to the loss of the Strongbow brand. Esber filed an answer and subsequently a motion for summary judgment.

**{¶8}** The trial court granted Esber's motion for summary judgment finding that the franchise termination rules of R.C. 1333.85(D) only apply to a "successor manufacturer" and HUSA was not a successor manufacturer.

**Standard of Review**

**{¶9}** We review cases involving a grant of summary judgment using a de novo standard of review. *LaBatt,* Ohio Sup. Court, Case No. 2012-0941, 2013-Ohio-4544, ¶9; *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶24. Summary judgment is appropriately granted when "'(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-

Ohio-5336, 979 N.E.2d 1261, at ¶12, *quoting Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

**Assignment of Error**

{¶10} HUSA raises one assignment of error,

{¶11} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JULY 19, 2013 JUDGMENT ENTRY, BECAUSE HEINEKEN USA, INC. IS A "SUCCESSOR MANUFACTURER" AND IT PROVIDED TIMELY NOTICE OF TERMINATION TO ESBER UNDER R.C. 1333.85(D)."

**Analysis**

{¶12} In Ohio, an alcoholic-beverage-distribution franchise is a creature of statute. The OABFA was enacted by the General Assembly in 1974. Am.Sub.H.B. No. 857, 135 Ohio Laws, Part II, 913. The purpose of the act was "to eliminate unfair practices by beer and wine manufacturers in their dealings with distributors." Legislative Service Commission Bill Analysis, Am.Sub.H.B. No. 857 (1974). The General Assembly included language in the act specifying that all contractual provisions that waive or fail to comply with the act are void. R.C. 1333.83. *LaBatt,* Ohio Sup. Court, Case No. 2012-0941, 2013-Ohio-4544, ¶10.

{¶13} Pursuant to the act, every manufacturer of alcoholic beverages must offer its distributors a written franchise agreement specifying the rights and duties of each party. R.C. 1333.83. If the parties do not enter a written franchise agreement, a franchise relationship will arise as a matter of law when a distributor distributes products for 90 days or more. *Id.*; *LaBatt*, ¶11.

{¶14} The act also specifies the prerequisites for canceling or terminating a franchise. R.C. 1333.85. The general rule is that prior consent of the other party and 60 days' notice is required in order to cancel a franchise. Id. The act also specifies situations that constitute just cause for cancellation and situations that do not. Id. When just cause exists, consent and notice are not required. Id. Regardless of whether the franchise is canceled with the prior consent of the distributor or whether the manufacturer can show just cause for canceling the franchise relationship, the manufacturer is always required to repurchase all of the terminated distributor's unsold inventory and sales aids. Id. Most relevant to this dispute, however, is the fact that the act also establishes a specific procedure for terminating a franchise when the manufacturer sells a particular brand or product of alcoholic beverage to a successor manufacturer. *LaBatt*, ¶12.

{¶15} Specifically, R.C. 1333.85(D) provides that if a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer, the successor manufacturer may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. Any notice of termination or nonrenewal of the franchise to a distributor of the acquired product or brand shall be received at the distributor's principal place of business within 90 days of the date of the acquisition. If notice is not received within this 90-day period, a franchise relationship is established between the parties. And if the successor manufacturer complies with the provisions of the statute, neither just cause nor consent of the distributor is required for termination or nonrenewal. On termination of a franchise, the successor manufacturer must repurchase the distributor's inventory and must

compensate the distributor for the diminished value of the distributor's business that is directly related to the sale of the product terminated by the successor manufacturer, including the appraised market value of the distributor's assets devoted to the sale of the terminated product and the goodwill associated with that product. *LaBatt*, ¶13.

**{¶16}** HUSA argues that it is a "successor manufacturer" as defined in R.C. 1333.82(B) and is therefore entitled to terminate Esber's franchise agreement pursuant to R.C. 1333.85(D). We agree.

**{¶17}** The evidence established in the case at bar that Heineken N.V. acquired the Strongbow brand effective April 28, 2008. Since that time, Heineken N.V. has, through its subsidiaries manufactured, market and sold Strongbow in international markets. Beginning in 2008, Strongbow was imported into the United States by VHCC. Neither at the time of Heineken N.V.'s acquisition of S&N UK, nor at any time thereafter, did Heineken N.V. or S&N UK ever hold a direct or indirect ownership interest in VHCC. Similarly, Heineken N.V. never had a contractual relationship with VHCC.

**{¶18}** The relationship was governed by contract between VHCC and Heineken N.V.'s wholly owned subsidiary, Heineken B.V. VHCC, in turn, supplied Strongbow pursuant to contracts it entered into with distributors such as Esber. On August 3, 2012, Heineken B.V. and VHCC entered into a negotiated agreement to an early termination of VHCC's rights to import the Strongbow brand, effective December 31, 2012. At that point, Heineken B.V. did not have an entity to import or supply Strongbow to distributors in the U.S. Heineken B.V. named HUSA as the sole supplier of Strongbow, beginning in January 2013.

{¶19} "Manufacturer" as used and defined in the OABFA includes a "supplier of alcoholic beverages to distributors." R.C. 1333.82(B). "Distributor" means a person that sells or distributes alcoholic beverages to retail permit holders in this state, but does not include the state or any of its political subdivisions. R.C. 1333.82(C). "Franchise" means a contract or any other legal device used to establish a contractual relationship between a manufacturer and a distributor. R.C. 1333.82(D).

{¶20} There is no evidence that VHCC is an Ohio corporation. Nor was there any evidence submitted in the trial court that VHCC is located in the State of Ohio. Thus, R.C. 1333.82 et seq., did not govern the relationship between VHCC and Heineken, N.V. or Heineken B.V. Likewise the record contains no evidence that Heineken B.V. ever supplied alcoholic beverages to distributors in the State of Ohio as defined in R.C. 1333.82(C). However even if R.C. 1333.82 et seq. had governed the relationship between Heineken N.V. or Heineken B.V. and VHCC, R.C. 1333.82 allows for the cancelation of a franchise agreement with the consent of the other party. See, *Labatt*, 2013-Ohio-4544, ¶12. In the case at bar VHCC agreed to an early termination of its relationship with Heineken in exchange for valuable consideration. The question in this case is whether Heineken N.V. or Heineken B.V. is required to honor the contracts that VHCC entered into with distributors of Strongbow to retail permit holders in this state such as Esber. We find that they do not as long as the procedure set forth in R.C. 1333.85(D) is followed.

{¶21} As the United States supplier of Strongbow, "it was VHCC that entered contractual relationships with distributors, such as Esber..., to distribute Strongbow in

Ohio and other states in the United States." *See* Parson*,* ¶15. Neither Heineken N.V. nor Heineken B.V. ever entered such agreements with distributors. *See* Parson, ¶16.

**{¶22}** Accordingly as defined in R.C. 1333.82, VHCC was the "supplier" of Strongbow to Esber who "disribut[ed] [Strongbow] to retail permit holders in this state..." The franchise agreement was between VHCC as "supplier" and Esber as "distributor." This is true because R.C. 1333.82(B) defines "manufacturer" as "a person, whether located in this state or elsewhere, that manufactures *or supplies alcoholic beverages to distributors in this state* (Emphasis added). Once Heineken B.V. lawfully terminated its import and distribution agreement with VHCC, Heineken B.V. acquired the right to decide who would import and supply the Strongbow brand to distributors, so long as the procedure set forth in R.C. 1333.85(D) was followed.

**{¶23}** Whether Heineken N.V., Heineken B.V. or HUSA owns the Strongbow brand is not germane to the issue in this case. Nor does it matter that Heineken B.V. and HUSA are owned by Heineken N.V. VHCC was an independent third party not owned, operated or controlled by Heineken N.V., Heineken B.V. or HUSA. Any relationship VHCC had with those entities was contractual. Either party was free to seek an early termination of that arrangement. VHCC and Heineken B.V. agreed for valuable consideration to an early termination of their contract.

**{¶24}** The trial court misconstrued our decision in *Esber I.* In that case, Esber brought a declaratory judgment action alleging termination of its franchise for foreign beer brand was unlawful, and seeking to enjoin the United States distributor from terminating Esber's franchise. *Esber I* was a 90-day notice case based upon the same April 28, 2008 transaction by which Heineken N.V. acquired Strongbow, but specifically

involved Heineken N.V.'s acquisition of the Newcastle Brown Ale brand and the related entities. Ultimately, this Court held that the Act did not authorize the termination of Esber's franchise. In reaching its holding, this Court stated:

> Even though NFB's appointment of [HUSA] as the import agent for [Newcastle Brown Ale] was not effective until September 1, 2008, Heineken owned and controlled both NFB and [HUSA] as of April 28, 2008. All of the correspondences from [HUSA] to its Ohio distributors, prior to September 1, 2008, acknowledged the change. We find the Legislature did not intend for a corporation to be able to manipulate the date of a transaction in order to circumvent the 90-day notice provision in R.C. 1333.85. We further find the trial court correctly analyzed the transaction under R.C. 1333.85(B)(4). [HUSA], therefore, did not timely, legally terminate Esber's franchise.

*Id.* at ¶25. See also, *Esber Beverage Company v. LaBatt*, 5th Dist. Stark Nos. 2011CA00113, 2011CA00116, 2012-Ohio-1183, ¶49 ("Similarly, in *Esber Beverage Co. v. Heineken USA, Inc.,* Stark App. No. 2011 CA00033, 2011–Ohio–5939, we found that the assignment or transfer of a manufacturer's product or brand to another manufacturer over which it exercises control, in order to manipulate the date of a transaction to circumvent the 90 day notice provision in R.C. 1333.85(D) did not meet the requirements of the statute. Id. at ¶ 25."). There is no allegation in the case at bar, that the time requirements set forth in R.C. 1333.85(D) were not properly followed. Further, in this case, Heineken B.V. bought the right to supply the Strongbow brand to distributors from VHCC, an entity over which Heineken N.V., Heineken B.V. and HUSA did not own or exercise control, for valuable consideration.

**{¶25}** Esber's reliance on *Hill Distrib. Co. v. St. Killian Importing Co.,* No. 2:11–cv–709, 2011 WL 3957255, *2 (S.D.Ohio Sept. 7, 2011) is not persuasive. In *St. Killian,* the manufacturer obtained a new importer, St. Killian, which then attempted to terminate the manufacturer's franchise agreement with Hill Distributing ("Hill"). As a result, Hill filed a motion for a preliminary injunction, seeking to enjoin St. Killian from terminating Hill's franchise agreement with the manufacturer. The United States District Court for the Southern District of Ohio, Eastern Division, granted Hill's motion, finding that although St. Killian bought the rights to import the alcohol from the manufacturer, the manufacturer still had to approve of St. Killian as its new importer, it continued to maintain control over its brands, and it was effectively reorganizing its business structure. *St. Killian* at 4. The court further found that the policy rationale behind the OABFA supports a decision in Hill's favor. The court concluded that "[t]he change of importer is likely a business rearrangement, and thus St. Killian may not qualify as a 'successor manufacturer' under [R.C. 1333.85(D)]." Id.

**{¶26}** However, *St. Killian* was a motion for a preliminary injunction, not a determination on the merits. In fact, the district court in *Killian* noted,

A final determination of this issue will require more factual development,

but the Court cannot say at this time that R.C. § 1333.85(D) applies. At

present, R.C. § 1333.85(B)(2) is most applicable.

*Killian*, 20011 WL 3957255, *3. Additionally, the Ohio Supreme Court has held that "just cause" is not required to terminate a franchise agreement pursuant to R.C. 1333.85(D). *LaBatt*, 2013-Ohio-4544, ¶13.

{¶27} In *LaBatt*, the Ohio Supreme Court recently held "that R.C. 1333.85(D) is clear and unambiguous and permits successor manufacturers to assemble their own team of distributors so long as the successor manufacturers provide timely notice and compensate those distributors who are not being retained." 2013-Ohio-4544, ¶1. HUSA is a successor manufacturer/ supplier who is entitled to give notice of its intention to terminate to Esber within 90 days of its purchase of the right to supply Strongbow brands in the U.S. from VHCC. We therefore reverse the trial court's grant of summary judgment in Esber's favor.

{¶28} HUSA's sole assignment of error is sustained.

{¶29} The judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion and the law.

By Gwin, J.,

Hoffman, P.J., and

Wise, J., concur