[Cite as *Columbus v. Oppong*, 2016-Ohio-5590.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | No. 15AP-1059 |
| v. | : | (M.C. No. 2015 TRC 100060) |
| Kwadwo A. Oppong, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 30, 2016

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Garrison P. Carr.* **Argued:** *Garrison P. Carr.*

**On brief:** *Eric L. LaFayette.*

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Kwadwo A. Oppong, appeals from a judgment of the Franklin County Municipal Court finding him guilty of operating a vehicle under the influence ("OVI") and two traffic violations. For the reasons that follow, the judgment of the trial court is affirmed.

I. BACKGROUND

{¶ 2} On January 2, 2015 at 7:38 p.m., appellant was charged with OVI-impaired, pursuant to Columbus Traffic Code 2133.01(A)(1)(a), failure to stop after an accident or collision ("failure to stop"), pursuant to Columbus Traffic Code 2135.12(A), and assured clear distance ahead ("ACDA"), pursuant to Columbus Traffic Code 2133.03(A). Appellant pled not guilty to the charges, and the case proceeded to a jury trial commencing October 19, 2015.

{¶ 3} Plaintiff-appellee, City of Columbus, made a motion in limine at the outset of the trial to attempt to exclude potential testimony by appellant, a lay witness, concerning the effects of his blood sugar. The trial court deferred ruling on the matter until the point of testimony.

{¶ 4} During opening statements, defense counsel asserted that the jury would hear that diabetic episodes mimic impairment from alcohol in many ways. The trial court sustained appellee's ensuing objection, specifying that while appellant could testify regarding what he felt like and his symptoms, he was precluded from saying he had a diabetic episode or making the blanket statement that a diabetic episode mimics someone who is under the influence of alcohol. The trial court indicated that to do so, defense counsel would need to call an expert to testify. Appellee then produced the following relevant evidence in its case-in-chief.

{¶ 5} Jodie Pierpoint testified that on the evening of January 2, 2015 at about 7:00 p.m., a car rear-ended her car while she was stopped at a traffic light. According to Pierpoint, after hitting her car, the other car drove to the left around her car and disappeared out of sight. Pierpoint remained in her own car until police arrived and later saw smoke around the intersection of Chillmark and North Hamilton Road. She did not see the driver of the car that hit her. As a result of the accident, she had to have the rear end of her car "completely redone." (Tr. Vol. II at 174.)

{¶ 6} Michael Patrick Shea testified that on the same evening, he drove behind a car that was driving erratically—driving left of center, going off of the right-hand side of the road, and almost sideswiping three cars while attempting a turn. He observed that same car hit a car stopped on Hamilton Road near Chillmark. According to Shea, the driver rear-ended the stopped car without attempting to slow down, drove around the car, went completely off Hamilton Road and headed southbound on the grass and gravel, re-entered Hamilton Road but quickly ended up in a ditch, and proceeded to hit a traffic sign at Hamilton Road and Chillmark. Shea pulled over near the car that had hit the other car, opened the door, and asked the driver if he was okay.

{¶ 7} According to Shea, the driver, who Shea later identified in court as appellant, responded that he was okay, denied hitting anything, and stated that he was going home. Shea then had what he described as an altercation with appellant over the

car keys because appellant was attempting to and actually did restart the car. After Shea succeeded in turning the car off, appellant exited the car out of the passenger side door and walked west on Chillmark. Shea waited at appellant's car for police to arrive. Shea testified that during the encounter, appellant slurred his speech and had a "fairly strong" smell of alcohol on his breath. (Tr. Vol. II at 189.) In Shea's opinion, appellant was impaired by alcohol.

{¶ 8} On cross-examination, Shea testified that appellant did not stagger or stumble as he walked away from the car. Shea also stated that he would not be able to tell the difference between alcohol impairment and a medical problem related to diabetes.

{¶ 9} Jacob Day, an advanced training officer for the Columbus Division of Police, testified that on January 2, 2015, he responded to a dispatch to look for a driver that fled an accident on foot. According to Day, he located the suspect, who he later identified in court as appellant, about one and one-half blocks away from the location of the accident. Day described appellant as having very slurred speech, eyes which were glassy and bloodshot, and a "strong odor of alcoholic beverage coming off his person." (Tr. Vol. II at 211.) Appellant was very confused and disoriented and was not able to explain where he was coming from or where he was going. Based on previous OVI arrests Day had made and his observations of appellant, particularly the strong odor of alcohol on appellant's breath, Day believed appellant was under the impairment of drugs or alcohol. Day and accompanying officers detained appellant and transported him to the investigating officer. When Day assisted in removing appellant from the police vehicle, the odor of alcohol was still strong.

{¶ 10} Day testified on cross-examination that appellant was walking normally down the sidewalk when officers found him but did not speak coherently in response to the officers' questions. Day additionally answered that he did not have enough medical training to know if appellant was impaired from something other than alcohol and that he was not aware of other medical conditions that cause a fruity odor on a person's breath that can be mistaken for alcohol. Day agreed that other medical conditions could cause confusion, slurred speech, and glassy eyes.

{¶ 11} Prior to resuming trial with appellee's next witnesses, the parties again discussed the extent to which appellant could discuss his alleged diabetic condition and

the pills he did or did not take the day of the accident. Appellee argued that a letter[1] from appellant's doctor provided in discovery undermines the credibility of the current defense theory. According to appellee, the letter states that appellant has hypoglycemia and does not discuss diabetes and states that the combination of two medications is what caused him to drive erratically, which does not support appellant's contention that his failure to take his medications resulted in his behavior. In response, defense counsel references not being able to get a doctor to testify and, as a result, expresses her understanding that appellant's testimony must be limited to his personal experiences and observations. Defense counsel reiterated that she believed these personal observations should include what pills he took and why and how the pills or lack of the pills made him feel. After an extensive discussion, the trial court judge expressed a willingness to permit testimony from appellant to the effect that he is prescribed drugs for a medical condition and his personal observation of the effects that either taking or not taking the drugs has on him.

{¶ 12} The trial resumed, and Thomas Baughn, an officer with the Columbus Division of Police, testified to serving as the investigating officer at the scene of the accident. When assisting officers with appellant, Baughn smelled a "moderate odor" of alcohol coming from him both while appellant was inside the police wagon and once he was outside of the wagon. (Tr. Vol. II at 260.) At that point, Baughn started noticing other signs of impairment. Appellant seemed unsteady on his feet, slurred his words, and his eyes were red, bloodshot, and glassy. In response to Baughn's question about whether he had anything to drink that night, appellant answered that he had one glass of wine.

{¶ 13} In anticipation of administering field sobriety tests, Baughn asked appellant basic questions including whether appellant was sick or had any illness. According to Baughn, appellant answered that he had diabetes and stated that he had taken his medication that day. Baughn then administered the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg-stand test. Appellant failed all three tests, exhibiting six out of six possible clues in performing the HGN test, five or six clues out of eight possible clues on the walk-and-turn test, and two or three clues in performing the one-leg-stand test. Baughn placed appellant under arrest for OVI, as well as ACDA and failure to stop based on the accident and leaving the scene.

---

[1] The letter is not contained in the record on appeal.

{¶ 14} Appellant consented to a breath test, and Baughn transported appellant to the Columbus Police Department for administration of the test. Baughn observed appellant attempt the test twice. According to Baughn, appellant puffed his checks but did not appear to be blowing into the mouthpiece. As a result, the two attempts were considered refusals. Baughn transported appellant back to his home to turn him over to his family, where appellant yelled obscenities at Baughn and became "disorderly" prior to entering his home. (Tr. Vol. II at 281.)

{¶ 15} On cross-examination, Baughn testified that after appellant failed the breath tests, he did not offer appellant a blood test or a urinalysis and did not remember if appellant asked to have a urinalysis test. Baughn additionally agreed that, according to the instruction manual for the field sobriety tests, it was possible that medical conditions could cause a person to fail various tests and that he did not look for a medical reason for his behavior. Baughn indicated that he believed diabetes could cause odors to be emitted from a person's breath.

{¶ 16} Marcus Miller, a patrol officer and senior blood alcohol content ("BAC") operator with the Columbus Division of Police, testified to administering appellant's BAC breath test. According to Miller, when appellant entered the testing room, appellant had the odor of an alcoholic beverage and slurred his speech. Appellant said he understood the test instructions, but, to Miller, it appeared that appellant was holding his breath and not blowing into the machine on both test attempts. Miller testified that the machine did not make a long, continuous tone to indicate air was being blown into the machine but, instead, beeped indicating no air was entering the system. In Miller's opinion, appellant did not exhibit signs that he was a "medical rule-out," a term used for those people that have a medical condition that mimics impairment, and did not otherwise look like he was having a medical incident. (Tr. Vol. III at 406.)

{¶ 17} Thereupon, appellee rested its case-in-chief. Exhibits admitted into evidence without objection included the police cruiser video, photographs of the damaged car, and BAC exhibits. Appellant moved for a judgment of acquittal under Crim.R. 29, which the court overruled. Appellant then testified in his own defense.

{¶ 18} According to appellant, on January 2, 2015, he got up around 7:00 a.m., had a cup of tea, and took his water pill and cholesterol pill. While he was working around his

New Albany home, he had about a five-ounce glass of wine at around 11:00 a.m. He got a call from his nephew that he was stranded at Interstate 23 going to Delaware and needed help with his car. While appellant's wife wanted him to eat and then take his blood sugar medication prior to leaving, appellant believed he would be able to quickly help his nephew so he left without taking his medication. However, the car repair took almost the whole day, and appellant did not start back toward home until nearly 7:00 p.m. Because appellant adheres to a particular diet that generally eliminates his ability to eat anything but home-made food, he did not have anything to eat during the time he helped repair his nephew's car and was functioning only on the one cup of tea and glass of wine.

{¶ 19} Appellant testified that he did not remember much about his ride home but that he felt tired and weak and believes he must have hit the back of a car and ended up rolling into a ditch. People began to gather around his car, and appellant thought Shea was an undercover police officer. Appellant continued that, due to taking a water pill earlier in the day, he needed to urinate so he placed his wallet, glasses, insurance, and registration in the front seat and headed to a bush less than 50 feet from a Walgreens, intending to return to the car. After he finished urinating in the bush, appellant saw police and went to meet them.

{¶ 20} Appellant told police that he had a glass of wine and then performed the field sobriety tests without his glasses and without really seeing the test demonstrations because he did not want to challenge the police. He only partially understood their directions, was confused by their yelling, and did not think the police listened to his questions. He begged the police to call his wife, which they did not allow. Police then handcuffed him and threw him in the back of the cruiser, where appellant felt weak and could not breathe well. For the subsequent breath test, appellant testified that he blew air into the straw for both tests and also asked for a urine or blood test, which officers denied him. Appellant further testified that he never insulted the police officers when he returned home.

{¶ 21} Appellant additionally testified, without objection, regarding the general effects of taking and missing his medication. According to appellant, when he takes the medicine he feels normal and when he does not take the medicine he feels tired and testy and gets a dry mouth and blurry vision. Further, "in severe cases, I'll be having slurred

speech, lack of concentration, get a heartbeat" and "feel confused."  (Tr. Vol. III at 427.) When he also does not eat, it is "serious" and he gets very weak.  (Tr. Vol. III at 427.) Appellant showed his medical alert necklace in court.  Regarding his typical alcohol consumption, appellant testified that he occasionally consumes wine, mostly around holidays and special events.

{¶ 22} On cross-examination, appellant agreed that he did not tell the police officer that he was not feeling well, such as being weak, tired, thirsty, and having blurry vision and a dry mouth because the officer was a professional and "could detect all those things" and because he did not want to have a confrontation with him.  (Tr. Vol. III at 449.) According to appellant, he told the officer he had taken his medication because he had taken the first two medications that day.  A couple of days after the accident, appellant went to urgent care, returned home, and did not recover for approximately five days. Appellant further testified that, as a professional commercial driver, he knew that a person is not supposed to leave the scene of an accident but did so to urinate and intended to return.

{¶ 23} Appellant then rested his case.  On October 23, 2015, the jury found appellant guilty of OVI and failure to stop, and the judge found appellant guilty of ACDA. For the OVI, the judge sentenced appellant to 3 days in a driver intervention program in lieu of jail, suspended appellant's license for 180 days, and imposed $375 in fines and court costs.  For the failure to stop, the judge sentenced appellant to 180 days in jail with 180 days suspended and suspended appellant's license for 180 days over the same date span as the OVI.  The judge authorized occupational driving privileges.  For the ACDA, the judge imposed a fine of $25.

{¶ 24} Appellant filed a timely appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 25} Appellant submits one assignment of error for our review:

> THE DEFENDANT'S RIGHT TO A FAIR TRIAL UNDER THE SIXTH AMENDMENT AND APPLICABLE THROUGH FOURTEENTH AMENDMENT OF THE CO[N]STITUTION WERE VIOLATED AS THE TRIAL COUNSEL'S ACTIONS RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL.

## III. STANDARD OF REVIEW

{¶ 26} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "To establish a claim of ineffective assistance of counsel, a defendant must show that the performance of trial counsel was deficient and that the deficient performance prejudiced him." *State v. Frye*, 10th Dist. No. 14AP-988, 2015-Ohio-3012, ¶ 11, citing *Strickland* at 687.

{¶ 27} To demonstrate that counsel's performance was deficient, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *State v. Canada*, 10th Dist. No. 14AP-523, 2015-Ohio-2167, ¶ 89. In doing so, the defendant must overcome the strong presumption that counsel's performance was adequate or that counsel's actions might be considered sound trial strategy. *Id.* at ¶ 90. To demonstrate that the deficient performance prejudiced him, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland* at 694. "The failure to make either showing defeats a claim of ineffective assistance of counsel." *Frye* at ¶ 11, citing *Strickland* at 697.

## IV. DISCUSSION

{¶ 28} In his sole assignment of error, appellant contends that he was deprived of the effective assistance of counsel because his trial counsel failed to investigate and call certain witnesses. As such, appellant asks us to remand the case to the trial court for a new trial. We disagree.

{¶ 29} Defense counsel's duty to investigate under *Strickland* is met if counsel " 'make[s] reasonable investigations' before trial." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 247, quoting *Strickland* at 691. Where the record on appeal does not indicate the extent of counsel's pretrial investigation, an appellate court "will not 'infer a defense failure to investigate from a silent record.' " *Id.*, quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 244.

{¶ 30} Furthermore, the decision not to seek expert testimony or call a certain witness is often a matter of trial strategy as the resultant testimony may be unpredictable

or even unfavorable to the defendant.  *Id.*; *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 61.  " 'Tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel.' "  *Id.*, quoting *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77.  As a result, the decision whether or not to call a witness generally does not deprive a defendant of the effective assistance of counsel absent a showing of prejudice.  *Id.*, citing *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 40.  Likewise, trial counsel's decision to rely on cross-examination in lieu of calling an expert witness does not constitute ineffective assistance of counsel.  *Thompson*; *Harris*.

{¶ 31} Appellant specifically takes issue with his trial counsel's failure to interview, subpoena, or call as a witness appellant's doctor, nephew, and wife.  In support of his argument, appellant cites *Middletown v. Allen*, 63 Ohio App.3d 443 (12th Dist.1989), for the proposition that "where counsel is aware of an essential potential witness and fails to interview or subpoena them, it constitutes ineffective assistance of counsel."  (Appellant's Brief at 7.)

{¶ 32} In *Allen*, the defendant claimed he was denied the effective assistance of counsel as a result of trial counsel's failure to subpoena his friends who would have provided an alibi defense.  The record in *Allen* showed that one particularly crucial friend "previously indicated that he would testify on appellant's behalf but counsel took no action to ensure the witness's presence at trial" and instead told the defendant to subpoena his friends himself.  *Id.* at 447.  Accordingly, the court ruled that counsel's failure to subpoena an alibi witness, which was a delegation of a substantial duty, denied appellant the effective assistance of counsel.  *Id.* at 448.  In doing so, the court emphasized that the witnesses at issue "clearly would have assisted the defense," and the lack of their testimony was prejudicial because they "would not have merely corroborated appellant's testimony but could have provided an alibi to a weakly supported theft offense" presented by the city.  *Id.*

{¶ 33} Appellant contends that, like in *Allen*, his doctor was necessary to maintaining his defense that his actions were attributable to a diabetic episode, rather than the influence of alcohol, and would have testified to the effects a diabetic episode would have had on appellant.  Appellant additionally contends that his nephew and wife

would have testified regarding "a timeline for non-alcohol use throughout most of the day," and his wife was willing to testify regarding appellant's subsequent urgent care visit. (Appellant's Brief at 7.)

{¶ 34} We find *Allen*, an alibi witness case with record support regarding the would-be testimony, readily distinguishable from the present case. Foremost, unlike *Allen*, appellant's arguments regarding his counsel's alleged deficient performance are based on speculation. Besides defense counsel's testimony alluding to being unable to secure a doctor, the record does not indicate the extent of defense counsel's pretrial investigation. We cannot infer that defense counsel failed to investigate these witnesses to the extent to deprive appellant of a fair trial. *Thompson* at ¶ 247. The record likewise does not establish that defense counsel's decision to not subpoena appellant's doctor, nephew, and wife was anything but a matter of trial strategy. Unlike *Allen*, the record does not support that the witnesses "clearly would have assisted the defense." *Id.* at 448. Moreover, as previously stated, trial counsel's decision to rely on cross-examination to advance a defense in place of calling a witness does not constitute ineffective assistance of counsel. *Thompson*; *Harris*. In other words, this record does not show defense counsel made errors so serious that she was not functioning as the counsel guaranteed by the Sixth Amendment. As such, appellant has not met his burden in showing defense counsel performed deficiently in preparation for and at trial.

{¶ 35} In addition, appellant has not established prejudice as a result of this alleged deficiency. As previously discussed, his prediction as to what the doctor, nephew, and wife would have testified is hypothetical and without a basis in the record. Even if these witnesses would have testified as he expected, the jury heard and rejected the idea that appellant's alleged diabetic episode or other medical malady explained away evidence of alcohol impairment. Furthermore, unlike *Allen*, appellee presented overwhelming evidence in support of convicting appellant. On this record, appellant has not shown that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Therefore, appellant has not met his burden in demonstrating that defense counsel's alleged deficient performance prejudiced him.

{¶ 36} Considering all the above, appellant has not demonstrated that trial counsel's actions denied him effective assistance of counsel.  Accordingly, appellant's sole assignment of error is overruled.

**V.  CONCLUSION**

{¶ 37} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____