[Cite as *State v. Boyde*, 2017-Ohio-7839.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-836 |
| v. | : | (C.P.C. No. 16CR-1351) |
| Duane D. Boyde, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 26, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee.

**On brief:** *Megan E. Grant*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Duane D. Boyde, appeals from the judgment entry of the Franklin County Court of Common Pleas finding appellant guilty of having weapons while under disability. For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 10, 2016, appellant was indicted for one count of felonious assault, in violation of R.C. 2903.11, with a firearm specification and one count of having weapons while under disability ("WUD"), in violation of R.C. 2923.13. Appellant signed a waiver of his right to a trial by jury with respect to the WUD charge, electing instead for that count to be tried to the court.

{¶ 3} Appellant's trial began on October 3, 2016. At the start of the trial, the judge asked appellant about his waiver of a jury trial for the WUD count; appellant confirmed his understanding of the waiver, and the court accepted the waiver with respect to the WUD charge.

{¶ 4} Plaintiff-appellee, State of Ohio, proceeded to present its case-in-chief. The victim, Dominique McQueary, testified that between 8:30 and 8:45 p.m. on February 28, 2016, appellant shot him in the leg near his hip. On that evening, McQueary was hanging out in an alley behind Taylor Avenue in Franklin County, approximately one block from where he lived. Others present in the alley included his friend, Angelica Lee, and "Tyrone," who were in the back seat of a parked van or truck, Quincy Cousar, "Dionne," and "Beaufort." (Tr. Vol. I at 231.) McQueary stood outside the front passenger side of the van. After approximately ten minutes, McQueary heard Quincy and someone else say "What's up, Wayne?"; McQueary turned around and looked at appellant. (Tr. Vol. I at 222.) According to McQueary, appellant said "something weird like, 'What's up with the guy,' " pulled a gun out from his right hip, and shot McQueary. (Tr. Vol. I at 223.) The shot hit McQueary in the leg near the hip, breaking his leg bone where it connects to his pelvis. Everyone in the alley ran except Lee, who stayed briefly before walking off. McQueary made his way to the house in front of the alley, knocked on the door, and someone called the police.

{¶ 5} At trial, McQueary denied smoking, doing drugs, or drinking the evening of the shooting. McQueary "[v]aguely" remembered the gun and described it as a black pistol or handgun, rather than a revolver, with a clip that was a little longer than normal. (Tr. Vol. I at 235.) According to McQueary, the lighting in the alley was "kind of lit up" by a light on an apartment and another light on the opposite side of the alley. (Tr. Vol. I at 233.) McQueary testified he is familiar with appellant from the neighborhood and said appellant lives three or four houses from where the shooting occurred. According to McQueary, he had an altercation with appellant a few months prior to the shooting, in December, in which McQueary said he punched and knocked out appellant.

{¶ 6} After being treated at the hospital, McQueary testified that he spoke to Officer Jon Speck of the Columbus Division of Police, identified the shooter as "Wayne * * * Boyde," which McQueary said is the name that everyone calls appellant, gave Speck a

description of appellant, and told Speck about the prior altercation with appellant in December. (Tr. Vol. I at 240.) Speck confirmed this account in his own testimony at trial. McQueary immediately picked appellant out of a photo array presented by a detective a few days after the shooting.

{¶ 7} Another detective on the case, Adam Federer, testified to conducting an interview with appellant. According to Federer, appellant voluntarily went to police headquarters and consented to an interview. Appellant denied knowing McQueary, getting in a prior altercation with him, being at the scene of the shooting, and shooting McQueary. Instead, appellant told detectives that he was with a female friend, Caprica Hamilton, the entire evening at a house a few blocks from where the shooting occurred.

{¶ 8} Lee and Cousar both testified that they are friends with McQueary and either were friends or grew up with appellant. They both admitted that they had been drinking the evening of the shooting and were in the alley with McQueary, but both denied seeing appellant or what happened. Lee said she blacked out briefly after hearing gun shots, and Cousar said he was relieving himself by the side of a house.

{¶ 9} A single 9 mm shell casing was found at the scene, a photo of which was entered into evidence along with crime scene photographs showing the location of where the casing was found in the alley. As a foundation for the WUD charge, appellee entered into evidence, without objection, a judgment entry documenting appellant's prior May 1, 2003 robbery conviction.

{¶ 10} Appellee rested its case-in-chief. Appellant moved the court for acquittal, pursuant to Crim.R. 29, which the trial court denied. Appellant then called Hamilton in his defense, who testified that appellant was with her at her house at the time of the shooting. Both parties rested their cases.

{¶ 11} On October 6, 2016, the jury found appellant not guilty of felonious assault as charged in the indictment. The judge, after finding McQueary's testimony "highly credible" and the testimony of the alibi witness "not * * * convincing," found appellant guilty of the WUD charge. (Tr. Vol. 2 at 365.) A sentencing hearing was held on November 15, 2016. The judge thereafter sentenced appellant to 30 months incarceration served concurrently to a separate Fairfield County aggravated assault conviction, with up to 3 years optional post-release control, and determined 259 days of jail credit.

{¶ 12} Appellant filed a timely appeal to this court.

## II.  ASSIGNMENTS OF ERROR

{¶ 13} Appellant presents two assignments of error:

[1.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTION AND THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.

[2.] THE APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 14} Under the first assignment of error, appellant contends the trial court erred when it denied appellant's motion for acquittal, pursuant to Crim.R. 29, because the evidence presented at trial was insufficient to support the conviction.  For the following reasons, we disagree.

{¶ 15} Pursuant to Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."  "Because analysis of the evidence for purposes of a Crim.R. 29(A) motion looks at the sufficiency of the evidence, a Crim.R. 29(A) motion and review of the sufficiency of the evidence are subject to the same analysis."  *State v. Clellan*, 10th Dist. No. 09AP-1043, 2010-Ohio-3841, ¶ 7.

{¶ 16} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Whether the evidence is legally sufficient to support a verdict is a question of law, not fact.  *Id.*  In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds

could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 17} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Further, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 18} Under the charged offense, the prosecution had the burden to prove defendant did knowingly acquire, have, carry, or use a firearm or dangerous ordinance while under indictment for, or having been convicted of a felony offense of violence, or for having been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence. R.C. 2923.13(A)(2). As stated by *State v. Sullivan*, 10th Dist. No. 11AP-414, 2012-Ohio-2737, ¶ 26:

> Having a weapon under disability is an offense in its own right, not a specification, and is not attached to any underlying offense. It is possible for appellant to be charged with other crimes, such as kidnapping, felonious assault, inducing panic, and tampering with evidence, and be acquitted, yet still be found guilty of the offense of having a weapon under disability. There is nothing inconsistent with this scenario.

{¶ 19} Here, appellant specifically argues that no rational trier of fact could have concluded beyond a reasonable doubt that appellant had a weapon under disability because only the victim testified to appellant's involvement, the victim's testimony was "filled with variations and holes," two witnesses for appellee denied seeing appellant that evening let alone seeing him with a gun, and appellant had a credible alibi witness. (Appellant's Brief at 9.)

{¶ 20} However, McQueary testified that he knew appellant and that appellant was the person who used a gun to shoot McQueary in the hip. McQueary described the gun and gave appellant's name and description to police at the hospital. As stated above, both the credibility of the witness and the jury's acquittal of appellant on the felonious assault charge is immaterial to whether the evidence is sufficient to support the WUD conviction. *Yarbrough* a ¶ 79-80; *Sullivan* at ¶ 26. If believed, McQueary's and Speck's testimonies provide evidence that appellant knowingly carried and used a firearm. Appellant has not challenged his disability for purposes of R.C. 2923.13 at either the trial or appellate level. Considering all the above, we cannot say that after viewing the evidence in a light most favorable to the prosecution, reasonable minds could not reach the conclusion reached by the trier of fact.

{¶ 21} Accordingly, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 22} Under the second assignment of error, appellant contends that he was prejudiced by ineffective assistance of counsel. We disagree.

{¶ 23} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "To establish a claim of ineffective assistance of counsel, a defendant must show that the performance of trial counsel was deficient and that the deficient performance prejudiced him." *State v. Frye*, 10th Dist. No. 14AP-988, 2015-Ohio-3012, ¶ 11, citing *Strickland* at 687.

{¶ 24} To demonstrate that counsel's performance was deficient, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *State v. Canada*, 10th Dist. No. 14AP-523, 2015-Ohio-2167, ¶ 89; *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001) ("To prevail on such a claim, a defendant must show that counsel's actions were professionally unreasonable."). In doing so, the defendant must overcome the strong presumption that counsel's performance was adequate or that counsel's actions might be considered sound trial strategy. *Canada* at ¶ 90. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019,

¶ 180, quoting *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 116 (" 'Debatable trial tactics generally do not constitute ineffective assistance of counsel.' ").

{¶ 25} To demonstrate that the deficient performance prejudiced him, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland* at 694. Conjectural evidence—predictions about what evidence could possibly be without a basis in the record—does not support a showing of prejudice to establish a claim of ineffective assistance of counsel. *Columbus v. Oppong*, 10th Dist. No. 15AP-1059, 2016-Ohio-5590, ¶ 35.

{¶ 26} The failure to make either the deficiency or prejudice showing defeats a claim of ineffective assistance of counsel. *Frye* at ¶ 11, citing *Strickland* at 697. Thus, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

{¶ 27} Here, appellant argues that his trial counsel was incompetent in employing the tactic of trying the WUD charge to the court. According to appellant, had he tried the WUD to the jury, which found him not guilty of felonious assault, he likewise would have not been found guilty of WUD. Thus, "[t]here is a reasonable probability that but for counsel's recommendation to try the WUD charge to the Court, the outcome would have been different." (Appellant's Brief at 12-13.)

{¶ 28} We disagree with appellant's assertion that his trial counsel's recommendation to try the WUD count to the court constituted a deficient performance. First, as provided above, a trial tactic, even a debatable one, generally does not constitute ineffective assistance of counsel. *Maxwell* at ¶ 180. Second, this particular trial tactic of trying a WUD count to the court is a widely used practice to protect a defendant from prejudice that could result from a defendant's prior conviction influencing a jury's determination on a separate charge. *State v. Cason*, 10th Dist. No. 12AP-492, 2013-Ohio-354, ¶ 4 (noting that having a WUD charge submitted to the judge presiding over the jury trial is a procedure "normally used by defense counsel from knowing the criminal defendant has a serious prior conviction"); *Sullivan* at ¶ 14; *State v. Turner*, 8th Dist. No.

98803, 2013-Ohio-1666, ¶ 20 (holding that trial counsel's decision to bifurcate the trial involving charges of aggravated robbery and WUD was reasonable because it would serve to protect the defendant from prejudice that could result from the disclosure of his prior aggravated robbery conviction). *See also State v. Johnson*, 10th Dist. No. 99AP-753 (May 30, 2000) (stating that defense counsel's representation was arguably deficient in failing to challenge the consolidation of a WUD and a felonious assault charge for a jury trial, thereby allowing the defendant's prior conviction to reach the jury). In this case, trial counsel's recommendation to try the WUD charge to the court constituted a sound trial strategy and was professionally reasonable.

{¶ 29} Considering the above, appellant has not met his burden in showing that trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Therefore, appellant has not demonstrated that his trial counsel performed deficiently. Because appellant failed to meet his burden under the deficiency prong of *Stickland*, appellant's claim of ineffective assistance of counsel necessarily fails. *Frye* at ¶ 11, citing *Strickland* at 697.

{¶ 30} Accordingly, appellant's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 31} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____