[Cite as *State v. Taylor*, 2018-Ohio-697.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO,<br>LAKE COUNTY HUMANE SOCIETY, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2017-L-042** |
| | : | |
| - vs - | : | |
| | : | |
| DAVID TAYLOR, | : | |
| Defendant-Appellant. | : | |
| | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No. 2016 CRB 03785.

Judgment: Affirmed.

*J. Jeffrey Holland*, Holland & Muirden, 143 Sharon-Copley Road, P.O. Box 345, Sharon Center, OH 44274 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, David Taylor, appeals from the judgment of the Willoughby Municipal Court, finding him guilty of Cruelty to Companion Animals. The issues to be determined by this court are whether the expert testimony of a veterinarian is admissible when he opines about the length of time medical conditions may have been present in a dog and whether a conviction for Cruelty to Companion Animals is supported by the weight of the evidence when testimony shows that the dog was

suffering from several treatable medical conditions, and lived outside in a yard filled with debris, nails, and broken glass. For the following reasons, we affirm the decision of the lower court.

{¶2} On September 28, 2016, complaints were filed in Case Nos. 2016 CRB 03785A-F, charging Taylor with six counts of Cruelty to Companion Animals, misdemeanors of the second degree, in violation of former R.C. 959.131(C)(2) and (3). Additional complaints were filed on October 5, 2016, in Case Nos. 2016 CRB 03785G-I, charging Taylor with three counts of Cruelty to Companion Animals, misdemeanors of the second degree, in violation of R.C. 959.131(D)(1).

{¶3} A bench trial was held on February 9, 2017. The following pertinent testimony was presented.

{¶4} Kasey Locotosh, a friend of Taylor's, testified that she had gone to a get together at Taylor's house around July 4, 2016, at which time Taylor's four dogs, Ariel, Earp, Igor, and Emilia were located in the yard. She noticed that Ariel looked sick and was scratching and shaking. Locotosh informed Taylor. When Locotosh returned in August, she noticed no change in Ariel's condition. She observed that the yard where the dogs were kept had little room to run and she saw no shelter other than underneath a trailer. She noted clutter and trash in the yard, as well as glass and nails on the ground.

{¶5} In September, Taylor was scheduled to serve a jail term and, according to Locotosh, his live-in girlfriend, Susan Bradley, was supposed to take care of the dogs. A few days after he was incarcerated, Bradley told Locotosh she was leaving and Locotosh agreed to care for the dogs. She did so for approximately five days until she

was locked out of the home by Taylor's son. During that time, she took Earp from the home, based on previous permission granted by Taylor. When Locotosh obtained a dog license for Earp, she showed pictures of the three other dogs to the dog warden and the Humane Society was contacted.

{¶6} Johnny Jarrell, Locotosh's boyfriend and Taylor's friend, also noticed that Ariel looked ill and reported this to Taylor, who told him not to worry. Both Jarrell and Locotosh testified that they had been in a business relationship with Taylor before he went to jail and that the parties had some disagreements.

{¶7} Leanne Pike, an agent for the Lake Humane Society, investigated the matter after she was contacted by the dog warden. She obtained a search warrant, observed the three dogs in poor condition, chewing and scratching themselves, and saw that they were covered with flies and fleas. Pike testified that the yard where they were living was difficult to navigate due to items laying around, pieces of dog feces were scattered about and debris, broken glass, and nails were found on the ground. She testified that "the flies were landing on [Igor] the worst out of all of them" and that his ears were bloody, scabbed, and "in terrible shape." He had open scabs on his body. She saw signs of obvious neglect given the dogs' physical condition, filthy water, and lack of access to food. Although Taylor later said he was treating the flies by using a Skin So Soft spray, she believed this was inappropriate care for the condition. Bradley told Pike that Taylor would forget to feed the dogs at times for two or three days.

{¶8} Dr. Alvin Brown, the shelter veterinarian for the Lake County Humane Society with over 40 years of veterinary experience, treated Ariel and her two young dogs, Igor and Emilia, after they were removed from Taylor's property. Dr. Brown

3

described all three dogs as "significantly underweight."

{¶9} Dr. Brown testified that Igor had a chronic and "pretty severe" infestation of ear mites, which he would have gotten when he was in a "litter situation" with close, intimate contact. He believed that Igor had them for "a significant period of time," at least six or seven months. Igor would have been excessively shaking his head during that time, which would have been obvious to a "reasonable pet owner." Dr. Brown testified that he has the training to tell how long an ear mite infestation has been present and that he could do so "easily."

{¶10} Dr. Brown also explained that Igor was covered in flies, which is not typical and indicates that he was housed improperly. He noted that fly bites can cause animals to suffer unnecessarily. Igor also had "fly-strike" which occurs when a dog flips his head back and forth to shake flies off of its ears. This causes the ears to become nicked, bleed, and scabbed. He described this condition as "very uncomfortable," and something that does not happen overnight or in a period of a week. Dr. Brown believed that a reasonable owner would have been aware of these issues "for a long period of time." Dr. Brown indicated that all three dogs also had fleas, which caused scratching and chewing at themselves.

{¶11} Igor also had a "severe infestation" of whipworms. These result from dogs coming into contact with stool, which often occurs when a dog is in unhealthy or "filthy" conditions. Dr. Brown noted the large number of eggs present and opined that Igor had this condition for "at least six months." Whipworms prevent dogs from maintaining a healthy body weight and result in chronic diarrhea.

{¶12} For the defense, Christine Hilditch, a family friend of Taylor's, stated that

4

she had observed the dogs in August 2016. She believed they were healthy, clean, and "fat." Their fur and ears looked fine and she did not see fleas. Hilditch did not observe "much dog feces" in the yard, and did not see broken glass, although there were some nails from a roofing project.

{¶13} Taylor testified that the dogs had fleas around July or August and he provided them with flea treatment. They continued to have problems so he treated the yard as well in the beginning of September. He gave the dogs shots and medication as needed and provided dewormer in July. He did not take the dogs to the veterinarian for any treatment. When Taylor entered jail in September, Bradley was given instructions about caring for the dogs and he was unaware she was going to leave. Taylor testified that he never abused or neglected his dogs, provided food through automatic feeders, and had three buckets of water and three dog houses in the yard. According to him, they were in a healthy condition when he left for jail.

{¶14} Taylor also testified that he had been in a business relationship with Locotosh and Jarrell and they took items from his storage unit while he was in jail.

{¶15} Following the trial, Taylor was found guilty of each of the nine counts. For the count pending before this court on appeal, 2016 CRB 03785A, the court ordered Taylor to serve a sentence of 90 days in jail, with 45 suspended and 45 deferred, and one year of probation. He was also permanently barred from owning companion animals. The trial court granted Taylor's request for a stay of his sentence pending appeal.

{¶16} Taylor appealed from his convictions and the appeals were consolidated. This court issued a memorandum opinion dismissing all appeals except the present

5

one, relating to Igor, for lack of a final order. *State v. Taylor*, 11th Dist. Lake Nos. 2017-L-051, et al., 2017-Ohio-7029.

**{¶17}** On appeal, Taylor raises the following assignments of error:

**{¶18}** "[1.] The trial court violated the defendant-appellant's state and federal constitutional rights to fair trial and due process when it permitted a veterinarian to give speculative and unreliable opinion testimony.

**{¶19}** "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶20}** In his first assignment of error, Taylor argues that it was error to permit Dr. Brown to testify regarding "the cause and duration of [Igor's] injuries."

**{¶21}** "[R]ulings concerning the admissibility and scope of expert opinion testimony are within the broad discretion of the trial court" and will not be reversed absent a showing of an abuse of discretion. *State v. Poling*, 11th Dist. Ashtabula No. 2008-A-0071, 2010-Ohio-1155, ¶ 41. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶22}** Pursuant to Evid.R. 702, a witness may testify as an expert if "all of the following apply":

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

6

(C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶23} A trial court "is not required to expressly state on the record that the witness is qualified as an expert prior to that witness offering opinion testimony." *State v. Waskelis*, 11th Dist. Portage No. 2011-P-0035, 2012-Ohio-3030, ¶ 64.

{¶24} Here, while Dr. Brown was not specifically qualified as an expert, it is apparent that he is an expert from his qualifications of working in the veterinary field for 40 years. He testified to his experience in treating dogs throughout that time and described the various conditions Igor suffered from based on his knowledge, skill, experience, and training.

{¶25} Taylor argues that, under Evid.R. 702(C), the testimony presented was not based on "reliable information." Primarily, he contends that testimony regarding the dates or time periods Igor began suffering was "speculative." We disagree.

{¶26} Taylor fails to provide convincing arguments that Dr. Brown's testimony was unreliable. First, regarding his testimony about the presence of ear mites, he believed Igor had the mites since around the time of his birth and that his mother likely got them when she was born. This was not based on speculation. Dr. Brown testified that, from his 43 years of experience and his training, he could differentiate between ear

7

mite infestations that occurred recently and those that had persisted. This was based on his knowledge of how ear mites are passed from animal to animal, including close, intimate contact. Similarly, as to the whipworms, Dr. Brown was able to conclude the approximate length of the time they were present based on his experience and observation of the large number of eggs that were present. Given his knowledge and experience, there is no reason to find that this testimony was unreliable.

{¶27} To the extent that Taylor takes issue with testimony regarding the time of year fleas are prevalent, it is evident that a veterinarian would have knowledge of such information. Further, Taylor himself admitted that there was a persistent flea problem around the time the dogs were found to be flea-infested. While Taylor also argues in relation to the fleas and flies that Dr. Brown did not address the type of scabbing, sores, and hair loss present specifically on Igor rather than the other dogs, this has no relation to whether his expert testimony was admissible. We emphasize that "weaknesses in the factual basis of an expert's testimony go to the weight and credibility of the expert's testimony, not to its admissibility." *Poling*, 2010-Ohio-1155, at ¶ 44; *Johnson v. Knipp*, 36 Ohio App.2d 218, 220, 304 N.E.2d 914 (9th Dist.1973) ("The absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony, and not to its admissibility. The burden falls on the opposing party to discredit or minimize the expert's testimony through cross-examination[.]"). The same analysis applies to Taylor's arguments that Dr. Brown was unable to identify the different dogs in some photos and that he misidentified the back of an ear as the inside of an ear. Based on the foregoing analysis, Taylor has failed to demonstrate that the expert testimony was inadmissible under Evid.R. 702.

**{¶28}** The first assignment of error is without merit.

**{¶29}** In his second assignment of error, Taylor argues that his conviction for abusing Igor was against the manifest weight of the evidence.

**{¶30}** Manifest weight of the evidence "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive— the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶31}** Pursuant to former R.C. 959.131(C)(3), "[n]o person who * * * is the custodian or caretaker of a companion animal shall negligently * * * [c]ommit any act of neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal."[1]

**{¶32}** We find that Taylor's conviction for abusing Igor was supported by the weight of the evidence. Testimony indicated that Igor had long-lasting health concerns,

---

1. The record indicates that Taylor was charged with a total of nine separate counts of Cruelty to Animals based on the change in the statutory language around the time the initial Complaints were filed. The conviction before us on appeal is based on R.C. 959.131(C)(3), which was in effect until September 13, 2016, although the Complaint stated that the offense occurred on or about August 15, 2016, through September 23, 2016 (a portion of which time Taylor was in jail). Taylor points this out but does not raise any arguments relating to the date the offenses occurred.

including fly-strike, whipworm, ear mites, and that he was underweight. He was living in a yard that several witnesses characterized as cluttered, with feces, nails, and broken glass on the ground. Testimony was presented that Taylor had been urged to provide better care and that he would periodically forget to feed the dogs. Taylor admitted that each of the dogs, including Igor, had suffered from infestations of fleas. Taylor also admitted to never taking the dogs to a veterinarian. Dr. Brown attested to the fact that these treatable conditions caused Igor to suffer and experience pain, weight loss, and chronic diarrhea. The facts demonstrate negligent actions and neglect which could have been relieved by Taylor and resulted in unnecessary suffering for Igor.

{¶33} Taylor raises several specific arguments in support of his contention that the conviction was not supported by the weight of the evidence. First, he argues that Locotosh and Jarrell had reasons to lie about his care of the dogs due to the conflicts arising from their business relationship. Their testimony regarding the condition of the dogs and the yard, however, was corroborated by testimony of other witnesses, including Dr. Brown and Humane Agent Pike. Further, the issue of credibility of witnesses is for the trier of fact to determine and "an appellate court may not substitute its own judgment." *State v. Starkey*, 11th Dist. Ashtabula No. 2017-A-0022, 2017-Ohio-9327, ¶ 52, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Even presuming Locotosh and Jarrell lacked credibility, this does not refute the evidence from other sources about the condition of the yard where Igor lived and the various ailments from which he suffered.

{¶34} Further, to the extent that Taylor argues the dogs lacked appropriate care or food solely because the care he arranged for while he was in jail fell through, this is

10

unpersuasive. The sum of the evidence presented showed the poor condition of Igor and the yard where he lived existed well before Taylor was incarcerated, which took place only a little over a week before the Humane Society responded to the complaint. Presuming that concerns with the water and the food at that time were not Taylor's fault, the conviction was still supported by the weight of the evidence.

{¶35} Finally, Taylor's testimony, which he cites extensively in his brief, that the dogs and yard were in good condition must be weighed with the other evidence and the finder of fact could find it lacking credibility given its self-serving nature. We find no basis to second-guess the verdict.

{¶36} The second assignment of error is without merit.

{¶37} For the foregoing reasons, the judgment of the Willoughby Municipal Court, finding Taylor guilty of Cruelty to Companion Animals, is affirmed. Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.

11