[Cite as *State v. Agee*, 2019-Ohio-3107.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

    Plaintiff-Appellee,                          :

                                  No. 18AP-737

v.                                                     :        (M.C. No. 18ERB-72072)

Shawn D. Agee, Jr.,                                    :        (REGULAR CALENDAR)

    Defendant-Appellant.                         :

---

D E C I S I O N

Rendered on August 1, 2019

---

**On brief:** *Zach Klein,* City Attorney, *Bill Hedrick, Orly Ahroni,* and *Isaac J. Rinsky,* for appellee. **Argued:** *Isaac J. Rinsky.*

**On brief:** *Evan N. Wagner,* for appellant. **Argued:** *Evan N. Wagner.*

APPEAL from the Franklin County Municipal Court,
Environmental Division

NELSON, J.

{¶ 1} Responding on June 26, 2018 to a complaint regarding a dog tangled in its tether, a Humane Society agent in Franklin County discovered three German Shepherds that belonged to Shawn Agee, Jr. and that the agent concluded were suffering from maltreatment; in her account, two of the dogs were tangled, with one's tether wrapped so tightly that its leg had started to swell, and all three had been restrained without access to food, water, or shelter. Aug. 15-16, 2018 Transcript of Proceedings at 15-16. Two of the dogs, having been bitten about the ears by flies, were suffering from "fly strike"; these were Bear and Princess. *Id.* at 18-19. The state charged Mr. Agee with 12 criminal misdemeanors relating to the treatment of the three companion animals. *See id.* at 97.

{¶ 2}  After a bench trial, the municipal court judge acquitted him of ten of those counts because Mr. Agee's unrebutted testimony had been that he was out of town for the weekend and had left the dogs in the care of his mother:  with regard to the injured leg, for example, the judge said, "I can't find him guilty of that if he wasn't around this weekend," and "the same goes" for certain other counts, even though "I don't think the dog had adequate water, shelter or food."  *Id.* at 99.  Thus, while "it was clear these dogs were kept in a condition they shouldn't have been kept in," the judge found that he could not "hold [Mr. Agee] responsible for something it seems like his mother might have been the caretaker of for the weekend."  *Id.* at 100.

{¶ 3}  By contrast, the judge did find Mr. Agee guilty of two second-degree misdemeanors (Counts 1 and 3) relating to the fly strikes involving Princess and Bear respectively, because "[t]hose were long time, very painful injuries not being treated" over a sustained period for which Mr. Agee had been the dogs' confiner, custodian, or caretaker: "those were not injuries that were just caused over the weekend" of Mr. Agee's absence.  *Id.* (reciting findings of guilt under R.C. 959.131(D)(1)).  The judge sentenced Mr. Agee to community control, with a fine of $100, a suspended jail sentence of 180 days, the surrender of dogs Diamond and Princess, the proviso that Bear be provided with regular vet appointments, and various other conditions.  Aug. 24, 2018 Sentencing Entry.

{¶ 4}  Mr. Agee appeals, specifying two assignments of error:  he submits first that "[t]he trial court erred as a matter of law by finding that the Appellant violated R.C. 959.131(D)(1)," and second that his convictions "were not supported by legally sufficient evidence."  Appellant's Brief at 4.

{¶ 5}  Under his first assignment of error, Mr. Agee engages in a prolonged statutory exegesis to argue that "he does not qualify as the type or class of persons subject to criminal liability merely as an owner."  *Id.* at 14 (also stating that "the trial court found the Appellant was NOT the 'custodian or caretaker' of the subject-matter companion animals with respect to all other counts despite the fact that all counts arose from the same transaction or occurrence"), 11-15.  But the trial court did not impose liability on Mr. Agee due to his status as the dogs' owner, but rather due to his having served as the two dogs' confiner, custodian, or caretaker when they developed their fly strike conditions and should have been but were not appropriately treated.  *See, e.g.,* Tr. at 97 ("I think although defendant was out of town over this particular weekend, I think reason and common sense

shows this was a long term condition and something that was just causing substantial pain to those two animals").

{¶ 6} Mr. Agee's attempt to manufacture a dispute over statutory construction fails, that is, because the trial court did not read the statutory subsection differently than Mr. Agee does with regard to whom it applies: the trial court did not impose any sort of strict liability based on Mr. Agee's status as the dogs' owner.

{¶ 7} R.C. 959.131(D)(1) makes it a crime for anyone "who confines or who is the custodian or caretaker of a companion animal [to] negligently * * * [t]orture, torment, or commit an act of cruelty against the companion animal," with torture, torment, and cruelty then defined by cross reference at R.C. 959.131(A)(2) to 1717.01[B] also including "every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief."

{¶ 8} The trial court made very clear that it was looking to Mr. Agee's own negligence when and while in town he acted as confiner, caretaker, or custodian of Princess and Bear while allowing the painful "long term condition" to develop and go untreated. Tr. at 97. The judge found that with regard to the fly strikes, there was a "substantial amount of damage and pain being caused to those animals that has been going on for a long period of time." *Id.* at 98. And the judge "was not persuaded with Defendant's exhibits as to whatever treatment, if [any]" Mr. Agee had provided while in town as the dogs' keeper. *Id.* (adding that dogs had not been seen by vet, and that there was "no indication" of appropriate treatment).

{¶ 9} So "[t]hose were not injuries that were just caused over the weekend" of Mr. Agee's absence. *Id.* at 100. In contradistinction, and precisely because Count 2 regarding Diamond's leg injury as caused by tethering also related to "someone who is the custodian or caretaker of the animal," the judge found Mr. Agee not guilty of that count: "if he wasn't around this weekend," he could not be "tie[d] in to this dog being tethered over the weekend." *Id.* at 99. The trial court did not misapprehend the statutory language. *See, e.g., State v. Taylor*, 11th Dist. No. 2017-L-042, 2018-Ohio-697, ¶ 34 ("The sum of the evidence" showed bad conditions "existed well before" owner's absence, which came "only a little over a week before the Humane Society responded to the complaint").

{¶ 10} And, to address also Mr. Agee's second assignment of error, the trial court had sufficient evidence by which to find the two violations of R.C. 959.131(D)(1) under that

shared reading of the statutory text. Mr. Agee admitted that he knew Bear and Princess had fly strike "two to three weeks before [he] left" town for the weekend. Tr. at 73; *see also id.* at 79. Further supporting the trial judge's conclusion that "those were not injuries that were just caused over the weekend * * * [t]hose were long time, very painful injuries not being [properly] treated," is Mr. Agee's acknowledgment that he had known the two dogs needed treatment perhaps some two weeks or so before he left town. *Id.* at 73, 79 (claiming to have obtained "some medicine, Advantix," and also specifying "beginning of June"). (Apparently and despite various defense references to "prescription medication," *see id.* at 75-76, he was referring not to medication but to over-the-counter flea and tick shampoo, *see id.* at 78-79 and Ex. G [with insert warning against reapplication within a week], which he said he obtained without the benefit of a vet having examined the dogs, *see* Transcript of Proceedings at 80 and Ex. B, C [vet records reflecting no visits/examinations from relevant time or preceding several months].) Mr. Agee claimed that he had been treating the dogs virtually "every day" for "21 days" with a peroxide solution (the bottle for which reads, presumably with regard to people: "**Do not use** * * * longer than one week"). Tr. at 81-82; Ex. D. Although the trial judge was not required to accept the truth of these treatment contentions, they could be found to reflect acknowledgment of the ongoing condition.

{¶ 11} The judge as finder of fact had evidence on which to base a conclusion that fly strike injuries to the dogs had occurred and not been remedied before Mr. Agee left town and while the pets were in his care. We are not in a position to second-guess the trial judge's finding that "there is substantial amount of damage and pain being caused to those animals that has been going on for a long period of time." Tr. at 98. The graphic, disturbing pictures of the sores, scabs, or deterioration on the ears of both dogs could be seen further to bear out his findings. *See* Ex. 10, 12, and 13 (Princess); 20, 21, 22, 23 (Bear); *see also, e.g.,* Tr. at 30 (regarding Princess); 37 (regarding Bear).

{¶ 12} And the trial judge was not compelled to accept Mr. Agee's version that he had tried after a fashion to provide at least some treatment, or his account of a vet office visit not reflected in the dogs' veterinary records. *See, id.* ("The Court was not persuaded with Defendant's exhibits as to whatever treatment, if treatment was being done on the animals. The Defendant's exhibit[s] as to the vet records don't show any occasion that these animals were seen for this particular treatment"). The trier of fact "is free to believe or

disbelieve all or any of the testimony." *State v. Crosky*, 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 78.

{¶ 13}   Evidence is sufficient for conviction when, viewed in the light most favorable to the prosecution, it would permit some rational trier of fact to find every element of the crime beyond a reasonable doubt. *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Therefore, "[a] verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Powell*, 10th Dist. No. 14AP-1054, 2015-Ohio-4459, ¶ 26, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 14}   We do not accept Mr. Agee's argument that injury from unremedied "fly strike alone" never can give rise to a finding of torture, torment, or cruelty under R.C. 959.131(D)(1).  *See* Appellant's Brief at 15-19.  His recitation of cases upholding convictions as based on other neglected conditions does not support his contention even to the extent that it establishes that there are worse forms of the offense, *see id.* at 18, and the testimony of the Humane Society agent that she normally would not in the first instance impound a dog based on fly strike, which is "not life threatening," does not establish the relevant standard.  In this case, the agent testified that fly strike is treatable, *see, e.g.*, Tr. at 13-14, 41; Appellant's Brief at 17 (pointing to agent's testimony that caretaker could "take steps to alleviate" fly strike), and that the severity of fly strike here was "more" severe than usually seen, Tr. at 58, and caused suffering, *id.* at 60; *see also, e.g.*, Ex. 13, 23.

{¶ 15}   Mr. Agee suggests no other impediment to the trial judge's authority as finder of fact on this record to determine that Mr. Agee through some act, omission, or neglect toward Princess and Bear permitted unnecessary or unjustifiable pain or suffering to persist when their fly strike condition or that pain was subject to reasonable remedy or relief.  Overruling both assignments of error, we affirm the two convictions.

*Judgment affirmed.*

KLATT, P.J. and BEATTY BLUNT, J., concur.

_____